### SMITH *v.* STATE.

[65 South. 564.]

1. CRIMINAL OFFENSES. *State officers. Indictment. Code 1906, section 1144. Fraud. Acts constituting. Appeal. Harmless error. Instructions.*

Under Code 1906, section 1144, providing that any officer or other person employed in any public office committing any fraud or embezzlement therein, should be punished as therein provided, an indictment charging that accused, a trustee of the state penitentiary, fraudulently caused to be bought and participated in buying an automobile from himself and a third person, and fraudulently procured and assisted in causing and procuring it to be paid for, and that the price therefor was well known to him to be exorbitant, unreasonable, and a fraud upon the state, whereby the state was cheated and defrauded out of the sum paid, was sufficient.

2. FRAUD. *Acts constituting.*

Fraud involves a breach of duty, trust or confidence, it includes all acts, omissions, or concealments by which another is injured or an undue and unconscientious advantage is taken.

3. CRIMINAL LAW. *Appeal. Harmless error. Instructions.*

Where a trustee of the state penitentiary was tried for fraud, consisting in buying and participating in buying an automobile from himself and a third party, and causing and procuring payment to be made by the state, knowing that it had not been purchased as provided by law, and that the price was exorbitant and unreasonable, instructions, that if accused, as trustee, voted for an order to pay the third party a specified sum of the state's funds for the purchase of the automobile, and if such sum was paid in accordance therewith, and if defendant then knew that that sum was grossly in excess of the value of the machine, it would be the jury's duty to find him guilty, and that, if under the con-

tract for the sale of the automobile to the state, it was to be delivered at the penitentiary farm in good condition, the sale was not completed until such delivery in good condition, and that if it was not so delivered in good condition, and the sum paid was a grossly exorbitant price for the automobile at the time it was paid for, and defendant knowing the price to be grossly exorbitant voted to pay such sum and such sum was paid by the state, it would be the jury's duty to find him guilty; while narrowing the issue presented by the indictment and proof did not do so to the prejudice of accused.

APPEAL from the circuit court of Hinds county.

HON. W. A. HENRY, Judge.

C. C. Smith was convicted of committing a fraud on the state, and appeals.

Appellant was indicted for committing a fraud upon the state, and was convicted and sentenced to the penitentiary and deprived of the office of penitentiary trustee, to which he had been elected. The record shows that appellant was the owner of a certain Buick automobile No. 19 which he purchased from one Withers for the sum of five hundred dollars. At the time he purchased the automobile it was a little more than a year old, and had been owned by three different parties. The first owner of the machine was R. S. Withers, who owned a garage, and was a dealer in automobiles. The original price of the machine was one thousand, two hundred and fifty-seven dollars, according to the testimony of Withers. Withers sold to Crook, and Crook to Brown, and Brown back to Withers, who, in turn, sold it to appellant for the sum of five hundred dollars, with a cash payment of one hundred dollars and the balance on time. After keeping the automobile for about a year, Mr. Smith decided to sell it and buy a new automobile. According to the testimony of Withers, he approached him and told him that he would like to get a new automobile, and that he wanted to sell his Buick to the state, and that, if Withers would help him sell it to the state, he might buy

his new automobile from Withers; but Withers did not
enter into the arrangement.

Appellant then got in communication with the Baker-
McDowell Hardware Company, of Natchez, Mississippi,
who were dealers in automobiles. This company sent one
of its traveling men, Mr. Liddell, to Insmore, the home
of the appellant, and, as a result of Mr. Liddell's trip,
appellant became the owner of an E. M. F. car for the
sum of one thousand dollars, and the Baker-McDowell
Hardware Company took appellant's Buick in the trade
for nine hundred dollars, and at the same time sold it to
the state for the use of the penitentiary farm for the sum
of nine hundred dollars, agreeing to wait for payment
until the money was available in the penitentiary fund.
The balance of the purchase price, one hundred dollars,
was charged to appellant on the books of the Baker-Mc-
Dowell Hardware Company, and afterwards credited
back to him by reason of certain repairs, etc., which he
claims to have made on the E. M. F. machine.

While Mr. Liddell was at Insmore negotiating a deal
with appellant, and, according to appellant's testimony,
after Liddell had agreed to take the Buick at nine hun-
dred dollars appellant suggested to Liddell that the pen-
itentiary farm needed a secondhand car, and that Col.
Montgomery, another one of the penitentiary trustees,
had been instructed to buy one, and that Col. Montgomery
wanted to buy a Buick, and that, if he would take the
matter up with Col. Montgomery, he might be able to
sell this Buick to him. Thereupon Col. Montgomery was
called over the telephone and talked to Liddell, who told
him that he was at Insmore, and that Mr. Smith had told
him that the state needed a secondhand automobile, and
that he (Liddell) had a Buick which he could recom-
mend, and which he would sell to the state for nine hun-
dred dollars. Mr. Smith then went to the telephone and
told Col. Montgomery that he knew the car and had
driven it, and that it was well worth the money, and

that he would recommend the purchase of it. Whereupon Col. Montgomery agreed over the phone to purchase the Buick, and it was agreed that Smith would drive the Buick through Edwards, Mississippi, the home of Col. Montgomery, and the latter would join him there, and they would drive to the state penitentiary farm at Tchula. Col. Montgomery never knew that the Buick automobile had ever been the property of Smith; but he had relied upon what both Liddell and Smith had said about the car being all right. Col. Montgomery testified that in his opinion the car was worth the money. Mr. Alexander, the manager of the Baker-McDowell Hardware Company, testified that Mr. Liddell called him over the telephone from Insmore and told him that he had made a deal with Smith to sell him an E. M. F. car for one thousand dollars, and allow Smith nine hundred dollars for his Buick, and that the state would take the Buick, provided the hardware company would wait for the money until the following February, when the funds would be available, as the current appropriation had been exhausted. Alexander agreed to the terms of the trade, and testified that the Buick was never delivered to the hardware company at all, but that under the agreement Mr. Smith kept the Buick, and was to drive it to the state farm.

Alexander testified that E. M. F. car which he sold Smith cost one thousand and twenty-seven dollars f. o. b. Natchez, which was wholesale price, but he was selling all of his automobiles, as he was going out of the automobile business, and was anxious to get rid of them as rapidly as possible.

A few days thereafter appellant drove the automobile from Insmore to Edwards, where Col. Montgomery joined him, and the two started together in the automobile for the state penitentiary farm at Tchula. After traveling about sixty miles, the automobile broke down. Several efforts were made to repair it, without result. The automobile was placed under a shed on a plantation near

the place where the brakedown occurred, but was after-
wards rolled from under the shed and allowed to remain
in the weather for several months. Subsequently it was
shipped by freight to the state farm, but was never used
to any extent. Its value is estimated by various wit-
nesses for the state at from one hundred and fifty to
three hundred and fifty dollars. Defendant and his wit-
nesses testified that it was worth from eight hundred to
one thousand dollars.

At the meeting of the penitentiary trustees in March,
1913, the account of the Baker-McDowell Hardware Com-
pany for nine hundred dollars was presented and al-
lowed; Messrs. Smith and Montgomery voting for the
allowance, and the other trustee, Taylor, voting in the
negative.

No resolution authorizing the purchase of this auto-
mobile appears on the minutes; but, according to de-
fendant's testimony, the resolution instructing Col.
Montgomery to purchase a secondhand automobile was
verbal. No advertisement was ever made for competi-
tive bids to be submitted, as is required by statute when
the state purchases supplies for the penitentiary.

The case was submitted to a jury on the instructions
hereinafter set out, and resulted in a conviction.

STATE'S INSTRUCTIONS GIVEN.

(1) The court instructs the jury for the state that
you are the sole judges of the credibility of the witnesses
who have testified before you in this case, and, if you be-
lieve any witness or witnesses have willfully and cor-
ruptly sworn falsely to any material matter in this case,
then you may wholly disregard the testimony of such
witness or witnesses in making up your verdict.

(2) The court instructs the jury for the state that, if
you believe from the evidence in this case beyond all rea-
sonable doubt that the defendant, C. C. Smith, in his ca-
pacity as trustee of the state penitentiary, voted for an

order to pay Baker-McDowell Hardware Company the sum of nine hundred dollars ($900) of the state's funds for the purchase of the automobile in question, and that said sum of money was paid in accordance with such order, and that at the time of such purchase the defendant knew that nine hundred dollars ($900) was greatly in excess of the value of said machine, then it is the sworn duty of the jury to return the following verdict: "We, the jury, find the defendant guilty as charged in the indictment."

(3) The court instructs the jury for the state that, if you believe from the evidence beyond a reasonable doubt that under the contract made for the sale of a Buick car to the state, that it was to be delivered by the defendant, C. C. Smith, at the penitentiary farm at Tchula in good condition, then the sale was not completed until such delivery at Tchula in good condition; and if you further believe from the evidence beyond all reasonable doubt that it was not delivered at the penitentiary farm at Tchula in good condition, and that the sum of nine hundred dollars was a grossly exorbitant price for the automobile at the time it was paid for by the trustees of the state penitentiary, and that the defendant, knowing the price grossly exorbitant, voted to pay said sum of nine hundred dollars to the Baker-McDowell Hardware Company, and that said sum was paid by the state, then it is the sworn duty of the jury to find the defendant guilty as charged.

INSTRUCTIONS GIVEN DEFENDANT.

(1) The court instructs the jury for the defendant in this case that the value of the car in question must be determined as of the 8th day of October, 1912, the date on which the sale was made to the state of Mississippi, unless the jury believe from the evidence beyond all reasonable doubt that under the contract it was to be delivered by the defendant, C. C. Smith, at Tchula, Mississippi, in good condition.

(2)   The court instructs the jury for the defendant that there are two necessary ingredients of a crime, to wit, a criminal act, and a criminal intent; and, in order for a man to be guilty of a crime, he must do an unlawful act, and there must be coupled with and accompanying the unlawful act a criminal intent to commit the crime charged.   The criminal intent is just as necessary as the unlawful act, so that in this case the court charges you on behalf of the defendant that the burden of proof is on the state to prove beyond all and every reasonable doubt that the defendant intended to defraud the state, before you can convict him, and if, after considering all the tesmony in this case, there is a reasonable doubt from the testimony, or for the want of testimony, that the defendant, Smith, intended to defraud the state, then it is your sworn duty under your oaths to return into this court the following verdict: "We, the jury, find the defendant not guilty."

(3).  The court instructs the jury for the defendant in this case that the law presumes every person who is charged with crime to be innocent of the whole crime and every part of it.   It is incumbent upon the state to prove by credible witnesses beyond all reasonable doubt that one charged of the crime is guilty.   The presumption of innocence clothes and protects the defendant from all suspicion, malice, or prejudice, if any, and stands as a witness in his behalf throughout the course of the trial, and during your deliberations in the jury box; and before you can lawfully convict the defendant, the presumption of innocence must be overcome by credible testimony.

(4)   The court instructs the jury for the defendant that the law presumes the defendant innocent of the whole crime charged and every part of it.  The burden is on the state to prove the defendant guilty beyond every reasonable doubt arising from the evidence or the want of evidence, and this burden of proof on the state never shifts to the defendant, but continues with the state

throughout the entire course of the trial. The defendant is never, under the law, required to prove and excuse or to prove his innocence of the crime charged or any part of it.

(5) The court instructs the jury for the defendant in this case that, if there is a probability of the defendant's innocence, then there is a reasonable doubt of his guilt, and under circumstances the law requires an acquittal at your hands.

(6) The court instructs the jury for the defendant in this case that, if there is a probability of the innocence of the defendant, then a reasonable doubt of his guilt exists, and the jury must acquit him.

(7) The court instructs the jury for the defendant that, before you are warranted, under the law, in convicting the defendant in this case, it is incumbent upon the state of Mississippi to prove each and every material allegation in the indictment beyond every reasonable doubt.

(8) The court instructs the jury for the defendant that suspicion, however strong, will not warrant the jury in finding the defendant guilty, but that, before you can convict the defendant, under the law, you must believe from the evidence beyond every reasonable doubt that the defendant is guilty as charged in the indictment.

(9) The court instructs the jury that, if you believe from the evidence that the delivery of the automobile in question was to be to C. C. Smith, at Insmore, Mississippi, instead of Tchula, Mississippi, and that the said automobile was delivered to the said C. C. Smith, at Insmore, Mississippi, then under the law, the contract of sale and delivery was full and complete.

(10) The court instructs the jury for the defendant that, unless they believe from the evidence in this case beyond all reasonable doubt that the automobile in question was not reasonably worth nine hundred dollars at the time it was sold to the state of Mississippi in October, 1912, and that the defendant knew it was not worth that sum at that time, they will find the defendant not guilty,

notwithstanding the fact that they may further believe from the evidence that since the sale to the state the car has deteriorated in value, and is not worth nine hundred dollars, unless the jury believe from the evidence beyond all reasonable doubt that under the contract it was to be delivered by defendant, C. C. Smith, at Tchula in good condition.

(11) The court instructs the jury for the defendant in this case that, before you can find the defendant guilty of the offense charged in this indictment, you must believe from the evidence beyond all reasonable doubt that the defendant, C. C. Smith, willfully, fraudulently, and feloniously purposed and intended to cheat and defraud the state of Mississippi out of the sum of nine hundred dollars, or some part thereof, and that in pursuance of such purpose and intention he knowingly, willfully, fraudulently, and feloniously sold or participated in the purchase of the automobile in question by the state of Mississippi at exorbitant and unreasonable price, and for a price the said C. C. Smith knew at the time of the sale and purchase to be exorbitant and unreasonable.

(12) The court instructs the jury for the defendant in this case that the gist of the offense charged is fraud, and that the defendant is not charged with any offense of buying or participating in the buying for the state of Mississippi of an automobile from the lowest bidder, or for buying a car which was not a necessary supply for the state penitentiary.

*Watkins & Watkins* and *Butler, Easterling & Potter,* for appellant.

*Powell & Thompson* and *Geo. H. Ethridge,* assistant attorney-general, for the state.

REED, J., delivered the opinion of the court.

Appellant, a trustee of the Mississippi penitentiary, was indicted, tried, and convicted on the charge of committing a fraud on the state.

The fraud charged against appellant was alleged to have consisted in his buying and participating in the buying of an automobile from himself and Baker-McDowell Hardware Company of Natchez, and in his assisting in causing and procuring the payment for the automobile by the state then knowing that it had not been purchased as provided by law, and that the price thereof was exorbitant and unreasonable.

Appellant and two other trustees had general supervision of the state penitentiary and management of the business and affairs of the penitentiary farms. To appellant and his associates was committed the duty of purchasing necessary supplies for the use of the penitentiary.

Appellant owned a Buick automobile. This car had been the property of R. S. Withers, an automobile dealer in Jackson, Mississippi. Withers purchased it July 15, 1910. He sold it to Dr. Crook, of Jackson, who in turn sold it to W. L. Brown, of the same city. In September, 1911, Mr. Withers again acquired ownership of the car. On September 28, 1911, he sold it to appellant for five hundred dollars, of which amount, one hundred dollars was paid in cash; the balance was on credit. Appellant took the car to his plantation at Insmore, Mississippi. He used it till October 8, 1912, when, through a trade or deal with the Baker-McDowell Hardware Company, it was sold to the state for the price of nine hundred dollars. Shortly afterwards appellant, with another trustee, endeavored to deliver the automobile to the state farm at Parchman. It seems to have been the purpose at first, when the sale was negotiated, to deliver it to the farm at Tchula. On the way the car broke down and was abandoned. It remained where it had broken down for several months. Finally after being repaired, it was shipped by railroad to Parchman. It was used scarcely at all after the breakdown, and thereafter was of small value. Pursuant to allowance of the account by the trus-

tees, a warrant for nine hundred dollars was issued to the Baker-McDowell Hardware Company in payment for the automobile. The allowance was made March 4, 1913, after the automobile had been left on the way, disabled.

We will not enter into any discussion or review of the evidence in the case. It is voluminous. Many witnesses were examined. There is much testimony, *pro* and *con*, relative to the value of the automobile, the sale to the state, the place of delivery, the reputation of appellant, and so on. A careful reading of the record convinces us that there was ample evidence to support the verdict of the jury. In truth it is manifest to us that the jury returned the only right verdict.

We do not find in the record any reversible error. It is claimed that the demurrer to the count in the indictment on which appellant was tried should have been sustained. From our view of the case, the indictment is sufficient. It is difficult to define fraud. In its commission there are devices "almost infinite in variety." As it involves breach of duty, trust, or confidence, it includes all acts, omissions, or concealments by which another is injured, or an undue and unconscientious advantage is taken. The statement in the indictment of the acts constituting the offense, fraud, is made sufficiently direct, clear, and concise, and furnished appellant an intelligible description of the charge upon which he was tried.

It is contended that error was made in giving instructions. Three instructions were given for the state. Against two of these there is complaint. It appears to us that in both instructions, the second and third, the issue presented by the indictment and proof is somewhat narrowed, but not to the prejudice of appellant. These instructions directed the law to evidence which we find in the record. In this trial on the charge of fraud alleged to have been committed by appellant, a state officer, against the state, each of the two instructions presented facts, which, if the jury believed, were sufficient to support a conviction.

Twelve instructions were given for appellant. Taken and construed together, they sufficiently announce the law pertinent to appellant's defense.

Construing all of the instructions used in the case together, and considering them as a whole, we believe the law applicable was fairly given.

Appellant had a fair trial of his case. We will not disturb the jury's verdict.

*Affirmed.*

SMITH, C. J. (dissenting).

I am unable to concur in the affirmance of the judgment of the court below in this cause, and will set forth as briefly as I can my reasons therefor.

Appellant was a member of the board of trustees of the state penitentiary; the other members thereof being W. A. Montgomery and Leroy Taylor. The indictment upon which he was convicted charged that:

He "did then and there willfully, wantonly, fraudulently, and feloniously, while acting and serving as a member of the board of trustees of the penitentiary of the state of Mississippi, caused to be bought and participated in the buying of a certain automobile of and from Baker-McDowell Hardware Company, Incorporated, of Natchez, Mississippi, and of and from himself, the said C. C. Smith, and then and there willfully, feloniously, fraudulently, and wantonly caused and procured and assisted in the cause and procuring the said automobile to be paid for by the state of Mississippi by a requisition in writing for the sum of nine hundred from the state treasury of Mississippi. . . . And that the price paid for the said automobile was well known to the said C. C. Smith to be exorbitant, unreasonable, and a fraud upon the state. By which said willful, wanton, fraudulent and felonious purchase, . . . the state of Mississippi was willfully, . . . feloniously cheated and defrauded . . . out of the sum of nine hundred dollars," etc.

107 Miss. 32

The statute under which the indictment was found is section 1144 of the Code of 1906, which reads as follows:

"If any officer, or other person employed in any public office, shall commit any fraud or embezzlement therein, he shall be imprisoned in the penitentiary not more than ten years, or in the county jail not more than one year, or be fined."

In order that we may clearly appreciate the effect of the errors which, in my judgment, were committed on the trial in the court below, it will be necessary for us to bear in mind that, in order to constitute the crime defined by this section, the act committed must have been prompted by an intent to defraud, and that, in the absence of such an intent, the act, though never so harmful, will be either an innocent one or constitute at most a misdemeanor. In the language of the brief of the attorney-general:

"In the present case the intent is the gist of the case, and is the thing that raises it from a misdemeanor to the grade of a felony. In other words, the act without the intent would be a misdemeanor, and the act with the intent was a felony."

The facts upon which the guilt or innocence of appellant depend are as follows:

In September, 1911, appellant purchased from Mr. R. S. Withers an automobile for the sum of five hundred dollars. He kept and used this automobile until October 1912, when it was sold to the state for the sum of nine hundred dollars by Baker-McDowell Hardware Company, to which Smith had previously sold it.

According to the state's contention, this sale was the result of a scheme entered into by Smith and Baker-McDowell Company to sell the automobile to the state at a grossly excessive price. The parties participating in this sale were the appellant himself, H. M. Alexander, president, and P. B. Liddell, an employee, of Baker-McDowell Hardware Company, and Col. W. A. Montgomery, one

of the trustees of the state penitentiary. According to their testimony, this sale came about in this way. Liddell, acting under instructions from Baker-McDowell Hardware Company, went to Insmore, appellant's place of residence, in order to sell to him, if possible, a secondhand automobile owned by that company, and, as a result of his negotiations with Smith, he swapped this automobile to Smith for his—the one afterwards sold to the state—Smith to pay one hundred dollars in cash in addition, the Baker-McDowell automobile to be delivered to Smith, at Insmore, and Smith's automobile to be delivered to Baker-McDowell Company at Natchez.

A few hours after this trade had been closed, according to the testimony of Liddell and appellant, appellant suggested to Liddell that the automobile taken by Baker-McDowell Company in exchange for the one owned by it might be sold to the state, as W. A. Montgomery had been directed to purchase one for one of the penitentiary farms. Appellant thereupon called Montgomery over the long-distance telephone, told him of the automobile, recommended its purchase, and then turned the telephone over to Liddell, who then sold the automobile to Montgomery for the sum of nine hundred dollars, and according to his testimony, and that of Montgomery, and that of Smith, was to deliver the automobile to Smith, at Insmore. Montgomery, either then or a few minutes afterwards, reminded Smith over the telephone that the appropriation for the support of the penitentiary has been exhausted, and they could not purchase the automobile, unless Baker-McDowell Company would wait until the appropriation for the next year was available. Smith thereupon called up Alexander, president of this company, explained the situation to him, and Alexander agreed that they would wait for their money until the appropriation for the next year was available.

Prior to this time, according to the testimony of appellant and of Montgomery, the purchase of an automo-

bile for one of the penitentiary farms had been determined on by them, and Montgomery instructed to purchase it; but no record thereof was entered on the minutes of the board of trustees. The other trustee did not participate in the authorizing of this purchase. The automobile was purchased with the intention on the part of Montgomery and Smith of using it at Belmont, one of the state farms located near Tchula; but afterwards it was determined to take it to Parchman. Montgomery then, according to his testimony and that of appellant, telephoned appellant to come to Edwards Montgomery's place of residence, in the automobile, and that they, appellant and Montgomery, would take it from there to Parchman. This appellant did about ten days after its sale to the state, and he and Montgomery started through the country to Parchman. The automobile broke down on the way, and they, being unable to proceed further with it, left it under a shed in charge of a Mr. E. B. Moore, and directed Mr. Lee Richardson, the owner of a garage in Vicksburg, to have it repaired. The automobile remained in that place for several months; was permitted to remain in the weather, and some parts of it to be broken by cattle. Richardson during this time sent three different men there to repair it, and the evidence varies as to the results accomplished by them; but suffice it to say that the automobile was finally transported to Parchman by rail, and has never since been in such condition that it could be used, and has, most of the time, been neglected and exposed to the weather, and at the time of the trial was practically worthless.

In March, 1913, the account of Baker-McDowell Company for the automobile was presented to the board of trustees, allowed, and paid; Smith and Montgomery voting therefor, the other trustee voting, if at all, in the negative.

The evidence as to the value of this automobile at the time of its sale to the state in October, 1912, was in hope-

less conflict, and that fact was one solely for the determination of the jury. There was evidence tending to show that at the time of the purchase of this automobile by Smith it was worth very much more than five hundred dollars, and tending to explain why it was that he was enabled to purchase it for that sum. There was also evidence in contradiction thereof.

In order for appellant to be convicted under this indictment, it was necessary for the jury to find as a fact that nine hundred dollars was, and to the knowledge of Smith, a grossly excessive price for the automobile at the time of its purchase. If it was sold to the state at a fair valuation, and in good faith, though unlawfully, in that the statute regulating purchasers by the state was not pursued, appellant is not guilty of the felony charged, even though at the time he voted to pay for the automobile it had decreased so much in value that the price paid was then grossly excessive. In my judgment therefore, the court below erred in refusing the following instructions requested by appellant:

"The court instructs the jury for the defendant that the value of the car in this case must be determined as of the 8th day of October, 1912, the date on which the sale was made to the state of Mississippi."

And:

"The court instructs the jury for the defendant that, unless they believe from the evidence in this case beyond all reasonable doubt that the automobile in question was not worth nine hundred dollars at the time it was sold to the state in October, 1912, they will find the defendant not guilty, notwithstanding the fact that they may further believe from the evidence that since the sale to the state the car had deteriorated in value, and is not worth nine hundred dollars."

It is true that, without reference to the value of the automobile, appellant may have been guilty of a misdemeanor by reason of is sale to the state; but he was not

indicted for having committed a misdemeanor, but for the felony defined in the section of the Code hereinbefore set forth. After refusing these instructions, the court granted the state's third instruction, which reads as follows:

"The court instructs the jury for the state that, if you believe from the evidence beyond a reasonable doubt that under the contract made for the sale of a Buick car, to the state, that it was to be delivered by the defendant, C. C. Smith, at the penitentiary farm at Tchula in good condition, then the sale was not completed until such delivery at Tchula in good condition; and if you further believe from the evidence beyond all reasonable doubt that it was not delivered at the penitentiary farm at Tchula in good condition, and that the sum of nine hundred dollars was a grossly exorbitant price for the automobile at the time it was paid for by the trustees of the state penitentiary, and that the defendant, knowing the price grossly exorbitant, voted to pay said sum of nine hundred dollars to the Baker-McDowell Hardware Company, and that said sum was paid by the state, then it is the sworn duty of the jury to find the defendant guilty as charged."

It will be observed that this instruction eliminated from the consideration of the jury practically all of what occurred at Insmore, or to be more accurate, permitted the jury, even though it should believe that what occurred at Insmore was done in good faith, and that the automobile then was worth nine hundred dollars, to find a verdict of guilty if it had so decreased in value by the time it was paid for that nine hundred dollars was then a grossly exorbitant price for it. It is clearly erroneous, first, because it permits a conviction without reference to a fraudulent intent on the part of appellant in voting for the payment of the automobile; second, because there was no evidence that Smith agreed to deliver the automobile at Tchula; and, third, even had there been such evi-

dence, delivery at Tchula was waived by Smith and Mont-gomery.

If this automobile was, in fact, purchased in good faith in October, 1912, to be delivered at a future date, and when delivered was worth less than the purchase price, Smith may have acted wrongfully in voting for its payment, and the fact that he did so vote may be evidence of a fraudulent intent on his part in so doing; but this intent should have been found as a fact by the jury, and should not have been assumed as matter of law by the court. Moreover, he was not indicted for fraudulently voting for the payment of an automobile, but for the fraudulent purchase of one; and his voting to pay was material only as showing the consummation of a fraudulent purchase.

The record wholly fails to disclose any evidence that this automobile was to have been delivered at Tchula. In one of the briefs of counsel for appellant it is stated that such evidence appears in "the testimony of Kinsman on page 449 of the record, and Exhibit 3 to his testimony, or Exhibit B, on page 490 of the record," and in "the testimony of Mr. Alexander, of the firm of Baker-McDowell Hardware Company." Kinsman knew nothing whatever of his own knowledge about this. He was secretary and treasurer of the Baker-McDowell Hardware Company, and exhibited its books containing the account of the state with this company showing the sale to it of this automobile, and following the entry thereof appeared a memorandum, "Delivered at Penitentiary Farm at Tchula, Mississippi." He stated that this was a transcribed entry; that he did not know how it came to be made, or from what book it was transcribed. This evidence was objected to by appellant, was incompetent, and should not have been admitted, and, even if competent, is insufficient of itself alone to establish, as against appellant, the fact that delivery was to be made at Tchula. All that Alexander testified to was that the au-

tomobile, was to be delivered "to the prison board of trustees,'' and that this delivery was to be made by Smith. On the other hand the only three persons who have any real knowledge of the place of delivery are Smith, Montgomery, and Liddell; and all three of them testified that delivery was to be made to Smith at Insmore.

It may be that the jury would had been warranted in believing that there was, in fact, no sale to the Baker-McDowell Company, and by it to the state, but that all that occurred in fact was that Smith himself sold the automobile to the state at a grossly exorbitant price in order to use the money thereby obtained in a purchase from Baker-McDowell Hardware Company of a new one, had that question been submitted to them under proper instruction; that this was not the question submitted to them by the instruction here under consideration, and a conviction was asked and obtained, without reference to that question at all. Even had there been an agreement to deliver the automobile at Tchula, Smith and Montgomery, by taking charge of it and starting to Parchman, waived that agreement in so far as Baker-McDowell Hardware Company was concerned, and if in so doing they acted in good faith, even though without authority so to do, no fraud would have been thereby perpetrated upon the state; and, in the absence of a fraudulent intent relative thereto, such waiver cannot constitute an element of the crime here charged.

In all that I have said with reference to the conduct of appellant, I have not meant to imply that he was guilty of no wrong, nor that he may not have been guilty of a crime; but what I do mean to say is that he was guilty of the crime here charged only in event that his acts were prompted by a fraudulent intent, and that the existence of this intent was a question for the determination of the jury.

The theory of counsel for the state is that this instruction was not erroneous, for the reason that guilt could

be predicated alone upon appellant's voting for the pay-
ment of the machine at a time when it was to his knowl-
edge worth less than the price paid. And this was the
theory upon which they attempted to have the case tried,
as evidenced by instructions presented to and refused oy
the court below.

Their contention is stated in one of the briefs as fol-
lows:

"We contend that the board as a board never agreed
to purchase this machine until they paid for it in March
following the transaction; that Col. Taylor never was
consulted in regard to the matter at all; that no order
was ever placed upon the minutes authorizing the pur-
chase; that no requirements of the statute were complied
with in the purchase; and that the transaction was never
in legal contemplation completed until the actual pay-
ment of the money by the trustees in February or March
of the year 1913, at which time the machine was abso-
lutely and confessedly worthless. And if at that time
defendant, Smith, voted to pay for a machine a price
which he knew was grossly and patently in excess of its
value, then he then and there committed a fraud upon
the state, for he was a trustee of the state and bound to
protect its interests.

"He had been largely trusted by the people, and should
have seen that the state treasury was not plundered,
and the fact that he did not do so, but with full knowledge
voted for an excessive payment out of the funds that had
been intrusted to his care, was a fraud in law and morals,
and was so even irrespective of any statutes upon the
subject."

The vice in this reasoning is that, conceding that the
statute was violated in the purchase of the automobile,
the felony here charged was not committed, unless the
violation was prompted by an intent to defraud, and
if the trustees believed in good faith that they had al-
ready purchased the automobile, and voted for its pay-

ment upon that theory, then the felony charged was not committed, even though it may have afterwards decreased in value.

The second instruction granted at the request of the state was as follows:

"The court instructs the jury for the state that, if you believe from the evidence in this case beyond all reasonable doubt that the defendant, C. C. Smith, in his capacity as trustee of the state penitentiary, voted for an order to pay Baker-McDowell Hardware Company the sum of nine hundred ($900) dollars of the state's funds for the purchase of the automobile in question, and that said sum of money was paid in accordance with such order, and that at the time of said purchase the defendant knew that nine hundred ($900) dollars was grossly in excess of the value of said machine, then it is the sworn duty of the jury to return the following verdict: 'We, the jury, find the defendant guilty as charged in the indictment.'"

This instruction, in addition to its failure to predicate guilt upon a fraudulent intent, was calculated to mislead the jury when read in connection with the state's instruction No. 3, hereinabove set out, into believing that the value of the machine was not to be determined as of the date of its purchase at Insmore, but as of the date on which appellant voted for its payment; and the error in so wording the instruction was emphasized by the modification made by the court to appellant's tenth instruction. This instruction as requested was as follows:

"The court instructs the jury for the defendant that, unless they believe from the evidence in this case beyond all reasonable doubt that the automobile in question was not reasonably worth nine hundred dollars at the time it was sold to the state of Mississippi in October, 1912, and that the defendant knew it was not worth that sum at that time, they will find the defendant not guilty, notwithstanding the fact that they may further believe from

the evidence that since the sale to the state the car has
deteriorated in value, and is not worth nine hundred dol-
lars.''

And the modification consisted in adding thereto the
following .

''Unless the jury believe from the evidence beyond all
reasonable doubt that under the contract it was to be de-
livered by defendant, C. C. Smith, at Tchula, Mississippi,
in good condition.''

In order to establish appellant's fraudulent intent, the
state introduced testimony showing that this automobile
was not purchased in the manner in which the state
claimed was contemplated by the statute; that is, that it
was purchased by these trustees, without an advertise-
ment for competitive bids therefor having been made.
In order to show that this violation of the statute, if
such it was, was committed in good faith, and with no
fraudulent intent, appellant sought to prove on the cross-
examination of Leroy Taylor, one of the trustees and a
witness for the state, but, on objection by the state, was
not permitted to do so, that since the organization of
the board of trustees the statute had been uniformly con-
strued by the executive officers of the state, including the
attorney-general, as not requiring an advertisement for
bids for the purchase of property of the character here
under consideration. This evidence should have been ad-
mitted, for, as I have hereinbefore stated, the fact that
a misdemeanor may have been committed does not war-
rant a conviction for the felony charged, unless the mis-
demeanor resulted in a fraud upon the state, and was
prompted by a fraudulent intent.

The testimony with reference to the sale of this auto-
mobile by Withers to Smith all showed that the sale
was intended to be for cash; that credit therefor was
neither asked by Smith nor promised by Withers. Over
the objection of appellant, the state was permitted to
prove that Smith did not, in fact, pay for the automobile

at the time of its purchase, and that at the time of the trial he probably owed a balance on it. He seems to have had a running account with Withers which aggregated about seven hundred dollars, and at the time of the trial there was due on this account the sum of about one hundred dollars. This evidence was probably admissible in order to contradict Withers and Smith, and to show that the sale, in fact, was made on a credit basis, and therefore that the cash price of the automobile at that time was less than five hundred dollars; but granted that it was erroneously admitted, I do not think appellant sustained any substantial prejudice thereby.

The trial in the court below was had nearly a year after the sale of the automobile to the state, and after it had received the treatment which I have hereinbefore set out. Over the objection of appellant, the state was permitted to prove by witnesses who had inspected the automobile a few days previous to the trial that it was then practically worthless. This evidence should not have been admitted. It was admitted, I presume, on the theory that it tended to establish the value of the automobile at the time of its purchase; but, if there is any presumption that the value of an article to-day is the same that it was at any given previous time, it must be shown that it is to-day in the same condition that it was on the previous occasion. It cannot be said that, if the automobile was practically worthless at the time of the trial, this evidenced the fact that it was of little value when purchased because, had it not been so, it would not have deteriorated so greatly in value in that time, for the reason that the evidence shows that it was handled after its purchase in an unusual manner, and in such a way as would probably have rendered even the best of automobiles practically worthless.

Several months after the automobile had been left by Smith and Montgomery with Moore it was shipped by rail to Parchman, and the state, over the objection of

appellant was permitted to prove that the freight thereon was paid by the board of trustees, and also to prove that after it reached Pacrhman an attempt was made to repair it, and the expense thereof was paid by the board of trustees. This evidence should not have been admitted, as it could have no bearing on the good faith of the transaction which occurred at Insmore. I presume that it was admitted on the theory that the car had never been delivered, and that any expense attached thereto should have been borne by Smith or Baker-McDowell Company, and not by the trustees, and therefore tended to show a fraudulent intent in the original purchase of the car. As I have hereinbefore pointed out, the delivery, in so far as this case is concerned, was completed at Insmore.

The indictment contained originally a count charging appellant with the commission of a felony because of his having voted for the payment of these items; but a demurrer was interposed thereto and sustained.

For these reasons, I think the judgment of the court below should be reversed, and a jury, upon proper evidence, and under proper instructions be permitted to pass upon the *bona fides* of the transaction which occurred at Insmore, for appellant's guilt *vel non* of the felony, with the commission of which he is charged, depends solely upon the solution of that question; and it, by the instructions hereinbefore referred to, and which were not cured by any of the other instructions granted was, in my judgment, entirely withdrawn from the jury's consideration.