JAMES L. ROBERTS, Jr., Justice,
for the Court:
Ray T. Bracken appeals from judgment of the Hinds County Chancery Court for the First Judicial District dissolving the partnership between himself and James H. Means, assessing damages against Bracken for partnership tax loss benefits accruing to Means, ordering Bracken to pay all costs of a court ordered accounting, holding Means harmless from liability for a bank loan secured by partnership property, and ordering sale of the partnership property.
Because the chancellor applied an erroneous legal standard to the adduced facts, we reverse and remand for further proceedings.

*180
FACTS

In 1962, James H. Means (Means) and Charlie Shamburger (Shamburger) were owners of an apartment complex in Jackson known as Capitol Company Apartments. The property was purchased by them from George Gregory for $191,000.00. Means and Shamburger paid $91,000.00 cash and assumed a loan of $100,000.00 secured by a mortgage on the property. In 1970, Sham-burger was diagnosed as having cancer and solicited the assistance of Means to sell his interest in the apartments. Means, then Vice-President of First National Bank (now Trustmark), offered Shamburger’s interest to his friend, Ray T. Bracken (Bracken), owner of Bracken Construction Company. Bracken agreed to purchase Shamburger’s interest for $45,000.00 cash with the proviso that the apartment rentals would be used to reimburse him. Gregory, who held record title to the property, executed a deed to Ray Bracken and his brother, J.C. Bracken, conveying them the entire record title. The Brackens then executed a deed conveying a one-half interest in the property to Means. The deed to Means was not recorded until 1983. Means told the Brackens that he did not want to record the document reflecting his interest because he worked for the bank. Record title to the apartment complex remained vested in the Brackens although Means actually owned a one-half interest by virtue of his unrecorded deed. Sometime later, Ray T. Bracken obtained J.C. Bracken’s interest in the property.
From 1962 until 1980, Means managed the apartments. He collected the rents, paid the bills for upkeep and maintenance, and sent Bracken a monthly statement reflecting income and expenditures.
The business venture was conducted as a partnership. Mr. Rhymes, Certified Public Accountant (CPA), was employed to prepare annual partnership tax returns.
Means left bank employment in 1972 and accepted gubernatorial appointment as State Bank Comptroller. In 1980, Means became a target for investigation by federal authorities. He requested that Bracken assume active management of the apartments. Bracken agreed to so do. Means was subsequently indicted, convicted, and sentenced to serve time in the federal penitentiary for bank fraud.
Upon assuming management role of the apartments, Bracken found them to be in a state of disrepair necessitating massive renovations. Paul Bass, a construction contractor, was employed to do the renovation. Bass’s construction company, Suburban Realty, Inc., purchased renovation materials through Brookwood Development Company, owned by Bracken and Bass.
The apartments were restored to serviceable condition, but the neighborhood deteriorated. Drug dealers and dope addicts resided in the vicinity and the crime rate escalated. The partnership suffered annual losses.
Bracken borrowed the monies required for renovation and, from time to time, infused his own money into the partnership to cover additional losses. In 1986, he refinanced the apartment debt by obtaining a new loan for $150,000.00 from the Bank of the South. Bracken executed all the documents, including a deed of trust conveying the partnership property in trust to secure the loan. According to Rhymes, the CPA who prepared the annual partnership tax returns, Bracken, from 1981 to 1989, contributed $175,142.00 to the partnership and withdrew from it $77,-603.46. Means made no contributions to the partnership account during this period of time.
Bracken wrote checks from time to time from the partnership account to reimburse himself for part of the money he had paid into the account. Withdrawals were charged back to Bracken by Rhymes, the partnership CPA. Rhymes related that Bracken took $202,767.00 in personal deductions as tax loss benefits from the partnership losses on his tax returns during the years 1981 through 1989. Means took no partnership tax loss benefits on his tax returns. Although Means contended at trial that Bracken did not furnish him information concerning the partnership during the entire time Bracken managed it, the uncontroverted testimony of Rhymes is to the effect that the annual partnership tax returns showing receipts and disbursements were available to Means at all *181 times, although Means neither requested nor took action to obtain them.
In 1984, Means' completed penitentiary service and returned to Jackson. He attempted to sell his interest in the apartments to Bracken, who refused to purchase. Bracken explained to Means that there'were no equities in the partnership property. The relationship between Means and Bracken deteriorated rapidly, resulting in Bracken’s suit for partition, sale of the property, dissolution of the partnership, and division of the proceeds. Means answered and counterclaimed for punitive damages. Trial ensued.
Upon conclusion of the evidence adduced during trial, the court rendered a bench ruling which included, inter alia, its opinion of the need for further accounting.
On November 26, 1990, the court rendered its interim order which:
(1) Dissolved the partnership;
(2) Ordered Bracken to hold Means harmless from any liability or claim of the Bank of the South for the loan obtained by Bracken in 1986 secured by partnership property;
(3) Denied Means’ counterclaim for punitive damages;
(4) Ordered an additional accounting by an independent CPA with the cost of the accounting to be assessed against Bracken;
(5) Ordered sale of the partnership property, but stayed the order for thirty (30)- days to give the parties time to discuss settlement.
On January 24, 1991, Means filed his motion relating that the 1988 taxes on the partnership property were not paid, that College Investment Company purchased the property, and unless redeemed, the parties would lose their interest in the property. Means alleged that Bracken was, and had been, collecting the rentals and, therefore, should be ordered to pay the taxes then outstanding and unpaid in the sum of $21,986.97. On February 15, 1991, the chancellor ordered Bracken to pay the taxes and any interest due.
On February 5, 1991, James L. Henley, Jr., independent CPA appointed by the chancellor, rendered a report setting forth the analysis of the tax loss benefits which accrued to Bracken during the time he managed the partnership. By using average tax rates in effect for each of the years the losses occurred, the CPA concluded Bracken claimed and obtained unentitled tax loss benefits of $24,524.00.
On February 22, 1991, the chancellor rendered final judgment which (a) ordered appointment of a special commissioner to sell the partnership property at public auction; (b) assessed damages of $24,524.00 against Bracken in favor.of Means for partnership tax loss benefits accruing to Means; and (c) ordered Bracken to pay all costs of the accounting.
Aggrieved, Bracken appeals presenting for our review the following issues:
(a) Upon dissolútion of the partnership, is Bracken entitled to credit for the loans made by him to the partnership?
(b) Is Means, by claiming an interest in the assets of the partnership, estopped from repudiating the debts of the partnership, or demanding that he be held harmless by Bracken from such debts?
(c) Is Means entitled to be compensated by Bracken for tax loss benefits claimed and taken by Bracken when Bracken was the only partner making contributions to the entity?

DISCUSSION

SCOPE OF REVIEW

We remain mindful that on appeal the findings of the chancellor will not be disturbed unless the findings were manifestly wrong, clearly erroneous or an erroneous legal standard was applied. McAdory v. McAdory, 608 So.2d 695, 699 (Miss.1992); Hill v. Southeastern Floor Covering Company, 596 So.2d 874, 877 (Miss.1992); Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990).

BRACKEN’S LOANS TO THE PARTNERSHIP

The chancellor ordered dissolution of the partnership and authorized sale of the partnership property. Inexplicably, the order ignored statutory rules governing the rights and liabilities of the partners, absent an agreement to the contrary. Miss.Code *182 Ann. (1972) § 79-12-35(l)(a)(b) (Supp.1992)[1] recites:
(a) Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits.
(b) The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business, or for the preservation of its business or property.
The record shows that each of the partners made initial contributions to the partnership capital account.
Means made no additional capital contributions prior to dissolution. Bracken made additional capital contributions in the sum of $175,142.00 and withdrew $77,603.46 which, according to CPA Rhymes, was charged against his capital account, leaving a net capital contribution balance of $97,538.54. Additionally, Bracken was ordered to pay $21,986.97 plus any interest due to redeem the partnership property from tax sales. These amounts should be added to Bracken’s capital account. Capital accounts of the parties should be repaid pursuant to Miss.Code Ann. (1972) § 79-12-79 (Supp.1992).

THE HOLD HARMLESS PROVISION OF THE CHANCELLOR’S JUDGMENT

On November 12, 1986, Bracken refinanced the partnership bank loan by borrowing $150,000.00 from the Bank of the South. The apartment complex was conveyed by deed of trust to secure the loan.' Means contended in the trial court that execution of the conveyance served only to encumber Bracken’s interest in the property. The trial court order dated November 26, 1990 states:
In regard to the Bank of the South, the court holds Mr. Bracken will solely be responsible for obligation to it and that he will hold harmless any liability or claim of the Bank of the South with regard to Mr. Means. The Bank of the South should maintain its lien on the undivided one-half of Mr. Bracken, subject to any taxes due on subject property.
The holding is contrary to provisions of the Mississippi Uniform Partnership Act, Miss. Code Ann. (1972) § 79-12-1 et seq. (Supp. 1992). Miss.Code Ann. (1972) § 79-12-19(4) (Supp.1992) provides:
Where the title to real property is in the name of one or more of all the partners, or in a third person in trust for the partnership, a conveyance executed by a partner in the partnership name, or in his own name, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under the provisions of paragraph (1) of section 79-12-17.[2]
Miss.Code Ann. (1972). § 79-12-17(1) (Supp.1992) provides:
Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.
*183 As partner, Bracken had the authority to execute the deed of trust conveying the partnership property as security for the Bank of the South loan. Without doubt, the loan proceeds were used to pay partnership debts and to decrease the capital account of Bracken in the partnership. Means became liable as a partner for the loan.

MEANS’ RESPONSIBILITIES FOR LOSSES OF THE PARTNERSHIP

Bracken maintains that Means’ action in claiming tax loss benefits estops him from avoiding responsibility for partnership losses. It is not necessary to implicate theories of estoppel in determining Means’ responsibility for partnership losses. Miss.Code Ann. (1972) § 79-12-29 (Supp.1992) states: “All partners are liable jointly and severally for all debts and obligations of the partnership....”
As a partner, Means bears a responsibility for payment of the partnership debts and obligations.

TAX LOSS BENEFITS

The court-employed CPA made calculations of the unentitled tax benefits received by Bracken’s “taking” all the partnership losses during the years he managed the property. Bracken’s entitlement to tax benefits is limited to his interest in the losses. The flaw in the calculations is the “average tax rate” applied in attempting to assess Bracken for unentitled tax benefits received by him from the losses. Means may or may not have been in the same tax bracket. Further, Means, pursuant to Miss.Code Ann. (1972) § 79-12-43 (Supp.1992), was entitled to a formal accounting of the partnership affairs. The reason he remained silent and let years slip by without claiming legal losses on his tax returns escapes us. The record is of little assistance in our search for an answer. Tax benefits from partnership losses vary from partner to partner. Our responsibility ends in declaring that Means and Bracken are each entitled to one-half of the tax losses which accrued while they were equal partners. Prior to J.C. Bracken’s departure from the partnership, he was entitled to a one-fourth interest in the benefits resulting from partnership losses. The ultimate outcome of the tax losses, or benefits accruing therefrom, is a matter for each of the partners, the Internal Revenue authorities, and the State Tax Commission.

CONCLUSION

Because the chancellor applied an erroneous legal standard to the facts adduced, this cause is reversed and remanded to the trial court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN and SMITH, JJ., concur.
BANKS, J., concurs in part and dissents in part with separate written opinion joined by McRAE, J.
DAN M. LEE, P.J., not participating.

. The Mississippi Uniform Partnership Act was enacted in 1976, effective from and after April 1, 1977.

. Miss.Code Ann. (1972) § 79-12-13 (Supp. 1992) prescribes rules for determining the existence of a partnership. Subsection (2) provides:
Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or party ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.
In this case, the parties admit that a partnership existed and the apartment complex is a partnership asset.