ROY NOBLE LEE, Presiding Justice,
for the Court:
A Mississippi attorney appeals from a decision of the Complaints Committee of the Mississippi State Bar adjudging that he is in violation of DR5-101(A) in that he was guilty of a conflict of interest in connection with his law practice. The Complaints Committee ordered that a public reprimand be administered against the attorney.
The appellant has assigned three (3) errors in the proceedings below, but, in view of the conclusion we have reached, it is necessary only to address the following assignment:
PROCEDURAL DUE PROCESS RIGHTS OF THE APPELLANT WERE PREJUDICIALLY VIOLATED BY THE COMPLAINTS COMMITTEE WHEN THEY ORDERED A PUBLIC REPRIMAND OF APPELLANT BASED ON CHARGES SUBSTANTIALLY DIFFERENT FROM THOSE INVESTIGATED, WITHOUT PROVIDING THE ATTORNEY WITH THE RIGHTS REQUIRED BY SECTION 73-3-321 AND SECTION 73-3-329, AND AS REQUIRED BY SECTION 73-3-319(b) OF MISSISSIPPI CODE OF 1972, AS AMENDED.
On August 29, 1983, J.B. Bates, Memphis, Tennessee, filed a letter complaint against appellant to the effect that appellant had exerted undue influence and violated his fiduciary duty to O.S. Bates, aunt of J.B. Bates.
Appellant represented O.S. Bates, an aged woman above ninety (90) years of age, for approximately thirty (30) years. Also, he was her close friend and advisor. She went to the office of appellant for the purpose of executing her last will and testament and indicated that she desired to leave everything to him. Appellant refused that request and advised her that, if she really wanted to make that provision in a will, she would have to see another lawyer. Ms. Bates declined to contact another attorney, since she had always used and relied upon appellant. She then made two bequests to charity and bequeathed the rest and residue of her property to her nephew, J.B. Bates.
Apparently, Ms. Bates was concerned that J.B. Bates might get all of her money before she died and, although she was living in the home of J.B. Bates and Jessica Bates, his wife, in Memphis, Tennessee, there is substantial evidence that he was mistreating her and attempting to obtain control of her money. Therefore, she entered into an agreement with appellant whereby she loaned his law firm the sum of fifteen thousand dollars ($15,000), payable on or before ten (10) years, with interest at the rate of eight percent (8%) per annum. Ms. Bates had confidence in appellant, and in taking such action, she was preserving some assets which J.B. Bates could not obtain. Appellant had need for the money, since his law firm had incurred a recent debt.
About the first of April, 1979, Ms. Bates telephoned appellant in Mississippi to come to Memphis where she lived, that she needed to talk with him. Further, she requested that he bring an envelope with him. Appellant complied with her request, went to Memphis and talked with her. During the conversation, she asked for the envelope he had brought, went into another room and returned with the $15,000 note, which she had placed in the envelope and gave it to him. Written on the back of the note was, “This is paid at my death,” and it was signed by O.S. Bates. She subsequently died on May 19, 1979.
Ms. Bates had appointed appellant as executor of her last will, he qualified as such executor, paid the bequests to the charities, and filed a petition for final discharge. The petition for discharge was joined in and sworn to by J.B. Bates, who was paid as residuary devisee and legatee the sum of nine thousand eight hundred fifteen dollars twenty-eight cents ($9,815.28). It was recited that “James Brooks Bates, Jr. now joins in this petition for the discharge of the executor and by so joining in this petition he waives time, place and notice of hearing and any other rights he may have at law and equity so that this *1232 estate might be concluded and he states to the court that he is satisfied with the administration of the estate.... ”
Upon receiving the complaint letter from J.B. Bates, a copy of the complaint was forwarded to appellant, who was given the opportunity to file an answer and who voluntarily executed answers to interrogatories and sent them to the counsel for the Complaints Committee. The Complaints Committee referred the matter to the Complaints Committee counsel for an investigation and an investigatory hearing was held by him where testimony and evidence were submitted and a record made. Appellant appeared at the hearing and he and witnesses testified in his behalf. The investigatory hearing was held on the complaint that there was a breach of fiduciary capacity and breach of professional responsibility on the part of appellant.
After the investigatory hearing, complaint counsel prepared an extensive report and submitted it to the Complaint Committee, as statute requires. His conclusion on the complaint investigated follows:
It is Complaint Counsel’s belief that O.S. Bates was fully aware of the use to which [the attorney] would put the $15,-000. It is further Complaint Counsel’s belief that at the time of the execution of the $15,000 check and the receipt of O.S. Bates of the promisory [sic] note from [the attorney] that O.S. Bates had no intentions of ever accepting the $15,000 back, unless J.B. Bates managed to secure all of her funds. That she had the utmost faith in [the attorney] to repay the note at any time she desired. The abuse by J.B. Bates precipitated the cancellation of the promisory [sic] note. It should be noted that during the entire time that J.B. Bates was abusing his aunt, she never once called for the police. According to Jessica Bates, this was because she was extremely proud of her family, as well she should have been in view of their accomplishments. She desired to keep her problems within the family and wanted no adverse publicity about her name. It should also be noted that [the attorney] was in the process of finding O.S. Bates another place to live at the time she took ill, was placed in the hospital, subsequently transfered [sic] to a home and died. In view of the testimony of Jessica Bates, Complaint Counsel can find no indication that the attempted to overreach O.S. Bates. Obviously, [the attorney] could have refused to take the $15,000 but once the promisory [sic] note was executed, [the attorney] had no control over what O.S. Bates intended to do with it.
Upon receipt of the investigatory report submitted by complaint counsel, the Complaints Committee met February 4, 1984, considered same, and voted to re-refer the case to complaints counsel. He was directed to ask the accused attorney (appellant) to address the issue of conflict of interest in that the attempted cancellation of the note was testamentary in nature and failed to meet the statutory requirements of a will; that as executor the attorney was compelled to contest the attempted cancellation and to bring the funds within the estate. Appellant responded to the conflict of interest question on February 23, 1984, and, without further hearing, appellant was informed on March 29, 1984, that he was in violation of DR5-101(A) in that he was guilty of a conflict of interest. The specific grounds for the conflict was stated to be that the attempted cancellation of the promissory note by Ms. O.S. Bates was a testamentary type transfer, that as executor of the Bates estate appellant should have contested the writing as an invalid will and required that the proceeds of the promissory note be brought into the estate for distribution; and that since appellant was a promissor (maker) on the note, he was unable to exercise independent professional judgment on behalf of his client, the Bates estate, in that his judgment may have been affected by his own financial business, property or personal interest. Public reprimand was imposed.
We now consider whether or not appellant was given a hearing on the charge for which he was disciplined, viz, violation of *1233 DR5-101(A), conflict of interest, and whether or not procedural due process rights of the appellant were violated because of the failure to afford a hearing on that complaint. Mississippi Code Annotated § 73-3-319(b) provides in part as follows:
(b) If upon review of the record, complaint counsel’s report and any written response by the accused attorney, the committee determines that there is reasonable ground to believe that the accused attorney has been guilty of unprofessional conduct or conduct evincing unfitness for the practice of law, and is of the further opinion that a reprimand of the accused attorney is all that justice requires and will adequately afford the disciplinary sanctions required by the particular circumstances, the committee may administer a private reprimand, or it may, in its discretion, make public the fact of the reprimand by having the same delivered in open court by the chancery or circuit court of the county of the accused attorney. However, such action shall not be taken except upon proper notice and hearing, such notice and hearing to be upon the same formal requirements and assuring to the accused attorney the same rights and privileges as provided in section 73-3-321, et seq. for hearings upon complaints which, if proven, would warrant suspension or disbarment. ...
In Netterville v. Miss. State Bar, 397 So.2d 878 (Miss.1981), the attorney appealed from a private reprimand ordered by the State Bar through its Complaints Committee. There the Court said:
Where suspension or disbarment is not involved, on the basis of the report made up by complaints counsel as stated above, the complaints committee, if it has “cause to believe” that the accused attorney is guilty, shall find him guilty, and order his punishment, in this case, a private reprimand. We think that the requirements of due process, as well as traditional Anglo-American notions of fair play and substantial justice, are violated by this one-sided procedure. Fairness demands that an accused attorney be given the names and addresses of any witnesses whose testimony complaints counsel intends to take, together with a statement of the time and place where such testimony is to be taken, and be given the right to attend and cross-examine. The accused attorney must also have the right to take the testimony of witnesses of his own, in the same manner, their transcribed testimony also to become a part of the report.
* * * * * *
Based upon its inherent power in the area of the disciplining of members of the legal profession, it is the order of this Court that, in future proceedings under sections 73-3-301 et seq., in order to meet the requirements of due process and of traditional Anglo-American notions of fair play and substantial justice, the investigatory hearing while not “a full evidentiary hearing” must be expanded to permit the accused attorney the privilege of offering transcripts of the testimony of witnesses and the right to cross-examine witnesses whose testimony is taken by complaints counsel, the transcripts in each instance to be included as parts of complaints counsel’s report, with other material required by the statute.
397 So.2d at 884.
In Re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), involved a similar issue. Ruffalo, an Ohio trial attorney, handled many cases against railroads. He was charged with soliciting clients through an agent, Michael Orlando. Orlando was an employee of the B & 0 Railroad Company. He occasionally investigated cases for Ruffalo in which B & 0 was a defendant.
It was not revealed until during the hearing that Orlando occasionally investigated his employer. On the third day of the hearing, additional charges were filed based on Ruffalo’s hiring of Orlando to investigate the B & 0 Railroad. For this action he was disbarred. Although Ruffalo was given a continuance to respond to the *1234 charges, the Supreme Court still found a due process violation. The Supreme Court reasoned that it was important for Ruffalo to know all the charges against him in order to properly defend against them. The same reasoning would appear to apply to this case.
At the outset of the complaint sub judice, appellant was advised of the complaint against him, e.g., that he had exerted undue influence and violated his fiduciary capacity to O.S. Bates. He was given an opportunity to respond and answer interrogatories, which he did. An investigatory hearing was held and he was given an opportunity to appear and present witnesses which he exercised. That complaint was found to be without basis, but the matter was re-referred to complaints counsel by the Complaints Committee on a complaint formulated by it on a conflict of interest ground. Complaint counsel called upon appellant to address that complaint, to which he responded. Without further ado, a reprimand was ordered for him. Even based on the first procedure, surely he had the right to think he would be given a hearing on that complaint before a finding against him was made. We are of the opinion that appellant had the right to a similar hearing on the conflict of interest complaint as on the first complaint by Bates and that this matter must be reversed and remanded to the Complaints Committee of the Mississippi State Bar for that purpose.[1]
REVERSED AND REMANDED TO THE COMMITTEE ON COMPLAINTS, MISSISSIPPI STATE BAR, FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.

. During oral argument, it was stated to the panel that there is now pending in the United States District Court a suit by J.B. Bates against appellant on the $15,000 note. While the outcome of the case might have some relevancy to this proceeding, that does not necessarily mean the question here would be decided by it.