Southeastern Floor Covering Company, Inc., hereinafter (Southeastern) did jobs in floor covering and ceilings for general contractors. Danny Hill was an employee of Southeastern and acted as general manager, with authority to prepare bid proposals and submit them to general contractors. In 1983, Hill worked up a bid for Southeastern for a job with Chata Construction Company for asbestos encapsulation, ceramic tile, ceiling, carpet and vinyl tile. The asbestos encapsulation bid had to be withdrawn because Southeastern was not licensed by the Environmental Protection Agency to do asbestos work.
Southeastern had used Southern Interiors, owned by Larry Barnes, which was licensed to do asbestos work, to subcontract on encapsulation projects. However, Hill did not contact Southern Interiors about subcontracting the Chata job for Southeastern, instead he contacted Southern Interiors on his own, independent of Southeastern, to work up a bid for the asbestos encapsulation job. Hill and Barnes worked up a bid and submitted it to Chata for the asbestos encapsulation. When he did this Hill was still employed by Southeastern. Hill profited by approximately $90,000.00 from the Chata job.
In 1985, a disgruntled Barnes informed Cecil Crowe, President of Southeastern, of what he and Hill had done on the Chata *Page 876 
job. Crowe confronted Hill about diverting the Chata job for his own personal profits and then fired Hill.
On April 2, 1986, Southeastern sued Hill and his new company, H H Floor Covering Company, Inc., and alleged that Hill was the manager of Southeastern and in a fiduciary position with them and that Hill, while so engaged, contacted Larry Barnes of Southern Interiors about bidding on the Chata project, a project that Hill should have bid for Southeastern. Hill diverted that project to Southern Interiors resulting in damages to Southeastern. Hill also set up H H Floor Covering in competition with Southeastern in violation of his contract and diverted some of Southeastern's business to H H Floor Covering.
Southeastern sought actual damages in the amount of $150,000.00 and punitive damages in the amount of $250,000.00. Southeastern sought to enjoin Hill from engaging in a competing business; sought to impose a constructive trust for the funds received from jobs performed in breach of contract and the fiduciary duty; and sought a complete accounting from Hill for the proceeds received from such jobs.
Hill's defense was that he discussed the Chata project with Cecil Crowe in 1983 and that Crowe was fully aware of the asbestos encapsulation arrangement with Southern Interiors. Hill contended that he did not start H H Floor Covering until Southeastern started to wind up its business. Hill's principal defense was that of laches and that the statute of limitations had run.
At trial only two witnesses testified, Danny Hill and Cecil Crowe, both called by Southeastern. Hill testified that he worked for both Magnolia Steel Company and Southeastern, a subsidiary of Magnolia Steel Company. Hill testified that his duties were to run Southeastern, and to bid and sell jobs. Hill further stated that he was the President and owner of H H Floor Covering and that he started doing business in 1985, at a time when he was still employed by Magnolia Steel.
Hill's version of the events of September 4, 1985, were that Cecil Crowe called him into his office, discussed Larry Barnes, Southern Interiors, the Chata project and then fired him. Throughout the trial Hill maintained that Crowe knew about his deal with Barnes when it was made in 1983. Hill received some $90,000.00 from the Chata project which he indicated that he used to pay on a debt to Crowe.[1]
Cecil Crowe testified that he asked Hill if he had taken profits for his own personal use from a portion of a project which could have been Southeastern's, and when Hill did not deny it he fired him. Crowe denied knowing about the Chata project arrangement with Southern Interiors before 1985, when he was told of it by Larry Barnes. Crowe testified that Hill had full authority to run Southeastern and that he was not aware that Hill had his own floor covering company.
The chancellor believed the testimony of Cecil Crowe and did not believe the testimony of Danny Hill. The chancellor found that Hill was an employee of Southeastern and had a duty of loyalty and a fiduciary relationship with Southeastern which he breached when he joined with Larry Barnes and Southern Interiors in the Chata project bid. The chancellor further found that Hill profited through the breach to the tune of $90,000.00.
The chancellor found the defense of laches was meritless and that the statute of limitations set out in Miss. Code Ann. §15-1-29 (Supp. 1991), was inapplicable as the claim was founded upon Hill's actions while an employee and not upon an unwritten contract. The chancellor declined to impose the non-competition clause of the contract because Southeastern was not then operating a floor covering business. Punitive damages, attorney's fees and a complete accounting were denied. *Page 877 
Hill and H H Floor Covering appeal and assign as error the following:
1. That the actions of Danny Hill did not amount to a breach of fiduciary duty; and
2. That the trial court erred in its application of the statute of limitations, Miss. Code Ann. § 15-1-29.
The overall standard for reviewing the findings of a chancellor is a familiar one and this Court will not disturb those findings unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Bell v. Parker, 563 So.2d 594, 597 (Miss. 1990). With that in mind we turn to the assigned errors.
 I. DID DANNY HILL BREACH A FIDUCIARY DUTY?
Hill occupied the position of general manager of Southeastern and was not just a mere employee. He was responsible for the day to day operations of the business and had full authority to do what he felt was best for the business. "The general manager of a corporation has general charge, direction, and control of the affairs of the company for the carrying on of which it was incorporated." As the general manager, Hill was an officer of Southeastern. 19 C.J.S. Corporations §§ 468-471 (1990). Directors and officers have a fiduciary relationship to the corporation. Fought v. Morris, 543 So.2d 167, 171 (Miss. 1989). It is undisputed that Hill was in a fiduciary relationship with Southeastern.
Hill owed to Southeastern the duty to exercise the utmost good faith and loyalty. Fought v. Morris, 543 So.2d at 171; Gibsonv. Manuel, 534 So.2d 199, 201 (Miss. 1988). One of the ways that the duty of good faith and loyalty may be breached is through the doctrine of corporate opportunity. This doctrine is defined as follows:
 [t]he doctrine of corporate opportunity prohibits directors or officers from appropriating to themselves business opportunities which in fairness should belong to the corporation. If there is presented to a corporate director or officer a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and if embracing the opportunity will bring the self-interest of the director or officer into conflict with that of the corporation, the director or officer may not seize the opportunity for himself.
 On the other hand, directors or officers may avail themselves of all opportunities lying outside the field of their duties as directors or officers. When a business opportunity comes to a corporate director or officer in an individual capacity, rather than in an official capacity, and the opportunity is not essential to the corporation, and is one in which it has no interest or expectancy, the opportunity is that of the director or officer, and not of the corporation, provided the director or officer has not wrongfully embarked the corporation's resources therein. Even if the opportunity is a corporate one, the director or officer may acquire it if the acquisition conforms to ethical standards of what is fair and equitable under the circumstances.
 The particular facts and circumstances of each case must be examined to determine whether the opportunity belonged to the corporation or was one personal to the individual . . .
19 C.J.S. Corporations § 513 (1990).
A complaining party must show by a preponderance of the evidence that under all the facts and circumstances the business opportunity was logically related to the corporation's existing or prospective activities. It must also establish that (1) the corporation was able to take advantage of the opportunity by showing that the corporation was not insolvent at the relevant times, or (2) financially disabled as a result of nonpayment of debts or breach of a fiduciary duty. This establishes a prima facie case of business opportunity and shifts the burden to the fiduciary to rebut *Page 878 
the prima facie case. Ellzey v. Fyr-Pruf, Inc., 376 So.2d 1328, 1335 (Miss. 1979).
Factors to be considered in determining whether or not the opportunity is in line with the corporation's business are the relationship of the opportunity to the corporation's business purposes and current activities, whether essential, necessary, or merely desirable to its reasonable needs and aspirations;whether or not the opportunity embraces areas adaptable to thecorporation's business and into which it might easily, naturally,or logically expand; the competitive nature of the opportunity, whether or not prospectively harmful or unfair; whether or not the opportunity includes activities as to which the corporation has fundamental knowledge, practical experience, facilities, equipment, personnel, and the ability to pursue; and whether or not the acquisition by the director or officer would defeat plans and purposes of the corporation in carrying on or developing the legitimate business for which it was created. 19 C.J.S.Corporation § 513(d) (1990); Ellzey v. Fyr-Pruf, Inc., 376 So.2d at 1333, quoting Miller v. Miller, 301 Minn. 207,222 N.W.2d 71, 81 (1974).
In this case it is reasonable to conclude that the Chata job was logically related to the activities in which Southeastern was involved. Southeastern often sub-contracted its jobs out. Southern Interiors was one of Southeastern's subcontractors. Southeastern could have easily adapted its operation to the asbestos portion of the Chata job by subcontracting that part of the job to Southern Interiors. Southeastern could have easily, naturally, and logically expanded its operation to include the asbestos encapsulation portion of the Chata job. But did Southeastern have the ability to take advantage of the opportunity?
The facts show that Southeastern did not actually have the ability to do asbestos encapsulation, as it lacked a license from the Environmental Protection Agency to do asbestos work. It is equally clear, however, that Southeastern often used subcontractors to do the labor on its jobs. Furthermore, Southeastern frequently used Southern Interiors, which was certified to do asbestos work, as one of its subcontractors. Therefore, it is reasonable that Southeastern could have used Southern Interiors to perform the asbestos encapsulation.
A factor weighing heavily in favor of usurpation of a corporate opportunity is that Danny Hill also did not have the ability to do asbestos encapsulation, but he took for himself, individually, steps that he could have taken on behalf of Southeastern. Hill associated himself with Southern Interiors in order to get the Chata job and made $90,000.00 profit from it. Hill used Southern Interior's license to do asbestos work to make a profit for himself and not Southeastern. Hill learned about the Chata job through his position with Southeastern. He bid on the asbestos portion of the job for Southeastern, but later withdrew the bid and resubmitted it through Southern Interiors for himself. The chancellor did not believe that Hill had informed Crowe about the Chata job, and we cannot say that finding is manifestly wrong.
There is substantial evidence to support the finding that Hill breached his fiduciary duty to Southeastern.
 II. DID THE TRIAL COURT ERR IN APPLYING THE STATUTE OF LIMITATIONS, MISS. CODE ANN. § 15-1-29 (SUPP. 1991)?
At trial Hill made reference to Miss. Code Ann. § 15-1-29
(Supp. 1991). The chancellor found that the defense of statute of limitations was meritless and inapplicable, as the suit was based on actions that occurred while Hill was an employee of Southeastern and was not based on an unwritten contract.
Hill contends that an employer-employee relationship is contractual in nature, whether that contract is expressed or implied, and argues that the claims of Southeastern arose from its employer-employee relationship with him and therefore, the limitations of § 15-1-29 were applicable. This limitations of actions statute provides: *Page 879 
 Except as otherwise provided in the Uniform Commercial Code, actions on an open account or account stated not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three (3) years next after the cause of action accrued, and not after, except that an action based on an unwritten contract of employment shall be commenced within one (1) year next after the cause of action accrued, and not after.
Miss. Code Ann. § 15-1-29 (Supp. 1991).
Therefore, Hill argues that the claim was based on an unwritten contract for employment and must commence within one year of the accrual of the action.
Hill's reasoning hinges on the action being based on an unwritten contract for employment. Therefore, only actions based on such a contract would be barred. Some of Hill's action, such as breach of the non-competition provision, are based on contract. However, the portion of the action dealing with the breach of the duty of loyalty is not based on contract, but sounds in tort. Bentz v. Vardaman Manufacturing Company,210 So.2d 35, 44 (Miss. 1968). This portion of the action is not covered by § 15-1-29, but by § 15-1-49, which at the time of this litigation provided that the statute of limitations applicable was six (6) years.[2] The action accrued in 1983, the suit was filed in 1986, and this was well within the then six year period provided by the statute.
Additionally, the alleged breach of the contract took place after a written contract was signed. Hill began to compete with Southeastern in violation of the written contract in 1985. The six (6) year period of § 15-1-49 applied to this claim. The action was filed in 1986 well within that period. The trial court correctly found that § 15-1-29 did not apply as that claim was based on a written contract.
The chancellor's finding that Danny Hill breached his fiduciary duty to Southeastern was supported by substantial evidence. Southeastern had often used subcontractors to do floor and ceiling work; and even though Southeastern was not qualified to do asbestos work, it could subcontract the work to Southern Interiors. This is especially true in view of the fact that Hill took the same actions on his own behalf that he could have taken to enable Southeastern to take advantage of the opportunity.
The chancellor was not manifestly wrong in finding Miss. Code Ann. § 15-1-29 inapplicable. The breach of loyalty portion of the action did not fit under the statute and the non-competition portion of the action was covered by Miss. Code Ann. § 15-1-49.
Judgment of $90,000.00 plus penalty and interest is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.
[1] An argument is made that Hill paid the $90,000.00 to Crowe and that therefore Southeastern did profit by the job. These payments were in mitigation of a prior embezzlement by Hill from Southeastern of some $102,000.00, and the argument extended on Hill's behalf that the contract went to the benefit of Southeastern is spurious.
[2] Miss. Code Ann. § 15-1-49 was amended in 1990 to reduce the period from six (6) years to three (3). The new period was not in effect until 1990, after this suit took place.