731 So.2d 1158 (1999)
H. Russell ROGERS
v.
THE MISSISSIPPI BAR.
No. 97-BA-01388-SCT.
Supreme Court of Mississippi.
January 21, 1999.
*1161 Natie P. Caraway, Jackson, Attorney for Appellant.
Michael B. Martz, Jackson, Attorney for Appellee.
En Banc.
BANKS, Justice, for the Court:
¶ 1. This case involves the suspension of an attorney for converting funds from his law firm by performing legal services after hours. The attorney was charged with violating Miss. R. Prof. Conduct 8.4(a), (c) and (d). We conclude that these Rules are not unconstitutional and that the facts presented below support the Complaint Tribunal's findings that Rogers violated Miss. R. Prof. Conduct 8.4(a) and (c), but did not support a finding that Rogers violated Miss. R. Prof. Conduct 8.4(d). In light of the mitigating and aggravating circumstances Rogers will be suspended from the practice of law for a period of 180-days, from the date of this judgment.

I.
¶ 2. In September of 1980, H. Russell Rogers ("Rogers") went to work as an associate for William Ward ("Ward"), who maintained a law office in Starkville. In July of 1981 Rogers and Ward formed the law partnership of Ward & Rogers. The terms of the Ward & Rogers ("W & R") Partnership Agreement provided that the partners were to "devote full time to the partnership profession." In addition to the Partnership Agreement, there was an informal agreement between the partners that Rogers, if he so desired, could handle any work not handled by the firm on his own time and keep the income.
¶ 3. Sometime in the mid to late 80's, while a partner of W & R, Rogers began `moonlighting' by performing real estate work, such as title searches. Rogers' moonlighting activities also included handling a few subrogation cases for regular clients. Requests for the real estate work primarily came from the National Bank of Commerce (NBC) or Deposit Guaranty National Bank (DGNB), both of which were regular clients of W & R. Rogers testified that he had a key to the court-house and the combination to the vault, which allowed him to do the majority of his extra-firm work during the evenings or on weekends.
¶ 4. Rogers admitted, however, that some of the work was done during `regular' business hours. For example, he would receive the requests for the real estate work and disburse checks during regular business hours. Rogers testified that because he could not avoid doing some of the extra-firm work during regular business hours, he would reimburse the firm by remitting the title insurance commissions earned on the transactions to the firm, while keeping the attorney's fees for himself. Rogers did not report the income generated by his moonlighting on his annual income tax returns, until sometime after Bar proceedings had commenced.
*1162 ¶ 5. In the fall of 1991 the Columbus based law firm of Gholson, Hicks & Nichols (GH & N) began looking at the feasibility of a merger with W & R. After negotiations, the firms drew up a Letter of Intent. As the only document which set out the intent of the parties regarding the merger, the Letter of Intent also came to serve as the merger agreement. Under the terms of the Letter of Intent Ward and Rogers received equal interests in 188 shares of GH & N stock. Each of the firms reserved to itself those matters which were close to completion. Also, exempted from the merger were the remunerations paid to several of the attorneys as a result of their serving on the Boards of various organizations. However, not all of these exemptions were listed in the Letter of Intent.
¶ 6. The Letter of Intent further provided that all shareholders were to serve on the Board of Directors for the firm. Additionally, compensations were to be determined by the firm's Board of Directors upon the recommendation of the compensation committee, both of which Rogers served on. Rogers' initial salary, as set out in the Letter of Intent, was calculated by taking his ultimate compensation and backing out of it the value of various fringe benefits and the salary he was expected to receive as the attorney for the Oktibbeha County Board. These calculations were designed to bring Rogers' salary in line with the other employees of GH & N. The Letter of Intent did not address the issue of whether the firm's employees would be allowed to moonlight. Nor did Rogers disclose to GH & N that he had been earning extra income by performing legal services after hours. On January 1, 1992, the law firms merged to form the Professional Association of Gholson, Hicks, Nichols & Ward ("GHN & W"). Rogers continued his `moonlighting' activities after the merger.
¶ 7. The American Title Insurance Company conducted a routine audit of the Starkville office in April of 1995. During the audit it was determined that a number of checks were missing from various banking statements. The payee on a majority of the checks was NBC (National Bank of Commerce); a few of the checks were made payable to H. Russell Rogers. The stubs for the checks indicated that the payees were either NBC or GHN & W. None of the stubs listed Rogers as the payee. The bank verified that the checks had either been deposited into Rogers personal account, used to pay on his personal loan, or cashed. When Rogers was confronted with the results of the audit he stated that "Old habits are hard to break" and "I know I've done wrong. I will pay the money back," and "I just made a mistake."
¶ 8. After Rogers' extra-firm activities came to light the firms decided to rescind the agreement and reverse the merger. Under the terms of the withdrawal and Termination Agreement, in addition to the disassociation of the firms, Rogers agreed to pay to GH & N the sum of $38,500.00, along with 8% interest, for the transactions in question. Rogers also agreed to indemnify GH & N for any loss which resulted from his employment with the firm.
¶ 9. GH & N also reported Rogers' activities to the Mississippi Bar (the Bar) under Miss. R. of Professional Conduct 8.3, as evidence of an attorney's unfitness to practice law. After an investigation, the Bar filed a Formal Complaint against Rogers on January 21, 1997. The Complaint alleged that Rogers "engaged in conduct that constitutes the improper conversion of firm funds and that such conduct is in violation of Rules 8.4 (a, c and d) of Mississippi's Rules of Professional Conduct."
¶ 10. The matter came on for hearing on August 18, 1997, before a Complaint Tribunal. During the hearing Rogers testified that his activities were consistent with the practices of other attorneys in the firm, before and after the merger. He argues that on several occasions other attorneys in the firm had called on him to provide *1163 legal services to third persons, some of which resulted in pecuniary gain to that attorney, but not to the firm. On one occasion Rogers closed a 2.7 million loan for a hotel in which several of the other attorneys in the firm held an interest as partners in a separate partnership. The firm was not paid a fee for the loan closing. On another occasion Rogers was called upon to represent, without charge, another attorney's partner in a subdivision development venture. That same attorney testified to having used firm resources and personnel in preparing deeds to be given to purchasers of lots in his subdivision. The attorney stated that it was his obligation as seller to provide the deeds to the purchasers. He did not charge his partnership a fee for the preparation of the deeds nor did he get prior approval from a majority of the members of the firm.
¶ 11. Various firm members agreed that it was permissible for the firm to provide "reciprocal" legal services to the individual attorneys of the firm without charge. These legal services were also provided to the attorneys in their pursuit of extra-firm activities such as subdivision closings and ownership interest in hotels. However, members of the firm testified that, although not an express policy, extra-firm activities which involved the practice of law, with the fees going to the attorney performing the work and not the firm, should have been approved by at least a majority of the members. Rogers was never informed of this policy.
¶ 12. Rogers further contends that his moonlighting activities were comprised of handling real estate transactions which the firm would not have handled, as they were regarded as unprofitable. Rogers testified that GHN & W had a fee schedule and generally charged between $350.00 and $400.00 for a real estate closing. He also testified that the profits generated by fees under $350.00 did not justify handling the work during office hours.
¶ 13. Although, Rogers never disclosed his moonlighting activities to anyone in the firm of GHN & W, he did create firm files for each of the transactions. He would also send title insurance checks to the Columbus office, some of which included attorneys fees and some of which did not, all of which denoted a file number. Those transactions which were sent absent attorneys fees were the product of Rogers' moonlighting activities.
¶ 14. After the hearing the Complaint Tribunal found that in the absence of disclosure by Rogers and approval by the other attorneys in the firm, Rogers' actions constituted a violation of the parties' written contract. The Tribunal also found that Rogers' withdrawal from the firm and his readiness to pay the money to the firm was tantamount to an admission. The Tribunal also placed great weight on the fact that Rogers failed to report the additional income to the Internal Revenue Service until later. The Tribunal issued a Judgment suspending Rogers indefinitely. Rogers filed a timely appeal from both the Tribunal's Findings of Facts and Conclusions of Law and the Final Judgment.

II.

a.
¶ 15. A Complaint Tribunal is convened for the purpose of hearing and disposing of Bar disciplinary matters. Miss. R. Discipline 8. However, the Mississippi Supreme Court retains "exclusive jurisdiction of matters pertaining to attorney discipline and reinstatement, and this Court is the ultimate judge of matters arising under the Rules of Discipline for the Mississippi Bar." Broome v. Mississippi Bar, 603 So.2d 349, 354 (Miss.1992). As such, the appropriate standard of review in Bar discipline matters is as follows:
On appeal, this Court "shall review the entire record and the findings and conclusions of the Tribunal, and shall render such orders as the Court may find appropriate." When reviewing disciplinary matters this Court, "reviews the evidence de novo, on a case-by-case basis, *1164 sitting as triers of fact, and no substantial evidence or manifest error rule shields the Tribunal from scrutiny."
Asher v. Mississippi Bar, 661 So.2d 722, 727 (Miss.1995) (quoting Underwood v. Mississippi Bar, 618 So.2d 64, 66-67 (Miss.1993) (quoting Foote v. Mississippi State Bar Ass'n, 517 So.2d 561, 564 (Miss. 1987))).
While the review of evidence is de novo, deference is given to the Tribunal's findings `due to its exclusive opportunity to observe the demeanor and attitude of the witnesses, including the attorney, which is vital in weighing the evidence.'
Asher, 661 So.2d at 727 (quoting Underwood, 618 So.2d at 67 (quoting Broome, 603 So.2d at 353)).

b.
¶ 16. Rogers claims that Rules 8.4(a), (b) & (c), standing alone, "boarder on being void for vagueness." A rule is vague where it fails to fairly warn those of ordinary intelligence as to what constitutes offending conduct such that those persons may pattern their actions in accordance with the rule. Vance v. Lincoln County Dept. of Pub. Welfare, 582 So.2d 414, 419 (Miss.1991). This Court has held that a rule "which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process." Vance, 582 So.2d at 418-19 (quoting Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)).
¶ 17. A "rule or standard is not objectionable[, however,] merely because it is stated in general terms and is not susceptible of precise application." Id. (quoting Transcontinental Gas Pipeline Corp. v. State Oil & Gas Bd., 457 So.2d 1298, 1323 (Miss.1984)). Rules should only be as specific as is permitted by the subject matter. Vance, 582 So.2d at 419. This is especially true in the context of rules governing the conduct of attorneys, because "[t]he regulation at issue herein applies only to lawyers, who are professionals and have the benefit of guidance provided by case law, court rules and the `lore of the profession.'" Howell v. State Bar of Texas, 843 F.2d 205, 208 (5th Cir.1988) (quoting In re Snyder, 472 U.S. 634, 645, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985)). The subsections to Rule 8.4, at issue herein, provide as follows:
RULE 8.4 MISCONDUCT
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;
* * * *
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
Subsections (a), (c) & (d) of Rule 8.4 are sufficiently clear as to their meaning and application so as to instruct those of ordinary intelligence, within the profession, on how to pattern their actions in accordance with the rules, as is further addressed, infra.
¶ 18. Rogers further argues that 8.4(a), (c) & (d) are vague as applied to this action because they are not accompanied by a charge that Rogers violated any other rule of professional conduct. This Court has held that 8.4(a), (c) & (d) are "the `bread and butter' charge in attorney discipline cases; it accompanies almost any other charge in a bar complaint." Mathes v. Mississippi Bar, 637 So.2d 840, 848 (Miss.1994). This does not mean, however, that the above subsections to Rule 8.4 can not stand independently as violations to the Miss. R. Prof. Conduct.
¶ 19. At least one prior holding of this Court indicates that Rule 8.4 subsections constitute Miss. R. Prof. Conduct violations in and of themselves. In Attorney M *1165 v. Mississippi Bar, 621 So.2d 220, 222 (Miss.1992), the Bar filed a Complaint against Attorney M, alleging a breach of the Attorney's Oath, as set out in Miss. Code Ann. § 73-3-35, and alleging violations of Miss. R. Prof. Conduct 4.4 and 8.4(c)(d). The Complaint Tribunal in Attorney M dismissed the Bar's claims that the attorney's actions constituted a breach of the Attorney's Oath and violations of Miss. R. Prof. Conduct 4.4, leaving only the Rule 8.4(c)-(d) claims for disposition. Id. The Tribunal found that Attorney M's conduct violated 8.4(c)(d). Id. This Court affirmed the dismissal of the claims that Attorney M had violated Rule 4.4 and the attorney's oath, but reversed the Tribunal on its finding that attorney M had violated Rule 8.4. Id. at 225-26. This Court reversed the Tribunal, not on the grounds that 8.4(c)(d) could not stand as Miss. R. Prof. Conduct violations, but rather on the grounds that the actions of Attorney M did not constitute "`dishonesty, fraud, deceit, or misrepresentation,'" so as to violate Rule 8.4. Attorney M v. Mississippi Bar, 621 So.2d 220, 224 (Miss.1992). See also Mississippi Bar v. Robb, 684 So.2d 615, 622 (Miss.1996); The Florida Bar v. Ward, 599 So.2d 650 (Fla.1992) (attorney's actions, outside the client context, such as conversion of a firm's funds, constitute a violation of 8.4(c)). Therefore, the subsections of 8.4 stand alone as Rules of Professional Conduct and as such are neither overly broad or vague.
¶ 20. Rogers further claims that the allegations contained in the Complaint were insufficient to serve as notice of the charges advanced by the Bar. Due process requires that in Bar matters an attorney is afforded notice and an opportunity to be heard. Harrison v. Mississippi Bar, 637 So.2d 204, 218 (Miss.1994). Notice must be reasonably calculated to inform the respondent of the charges against which he must defend. See Booth v. Mississippi Employment Sec. Comm'n, 588 So.2d 422, 427-28 (Miss.1991); Harris v. Mississippi Real Estate Comm'n, 500 So.2d 958, 965 (Miss.1986). In Nelson v. Mississippi State Board. of Veterinary Medicine, 662 So.2d 1058, 1061 (Miss.1995), the respondent to a Complaint, which sought to suspend or terminate his license, claimed that the complaint letter failed to "inform him of specific `allegations or circumstances which were to be presented against him.'" This Court found that the complaint letter comported with the requirements of due process where the letter set out the statute with which the respondent was charged with violating and the conduct which was to have violated the statute. Id. at 1062.
¶ 21. Here the Complaint alleges that Rogers, by his conduct, violated Rules 8.4(a), (c) & (d). The Complaint goes on to describe the offending conduct as follows:
Mr. Rogers failed to disclose that he performed legal work "after hours or on his own time" and that he was keeping attorney fees that he received from performing such legal services.
* * * *
The Bar alleges, on information and belief, that Mr. Rogers has engaged in conduct that constitutes the improper conversion of firm funds and that such conduct is in violation of Rules 8.4(a), (c) & (d).
Therefore, the above allegations were sufficient to satisfy the notice requirements of due process by putting Rogers on notice as to the charges against which he would be required to defend. This assignment of error is without merit.

c.
¶ 22. Rogers raises the issue of whether there was sufficient evidence to prove that he violated the charged Rules of Professional Conduct. In attorney disciplinary proceedings the burden is on the Bar to prove by clear and convincing evidence that the respondent's actions constitute professional misconduct. Mississippi Bar v. Pels, 708 So.2d 1372, 1374 (Miss. 1998). Rogers argues that since this action involves a dispute among lawyers, and *1166 no clients were involved, "the Bar should be slow to condemn." This Court does not agree. The Rules of Discipline for the Mississippi State Bar state that the grounds for discipline include "[a]cts or omissions by an attorney, individually or in concert with any other person or persons, which violate the Attorney's Oath of Office or the Code of Professional Responsibility as now set forth or as hereafter amended, shall constitute misconduct and shall be grounds for discipline, whether or not the acts or omissions occurred in the course of an attorney-client relationship." (Emphasis added). However, where the Rules use terms of art their legal meanings should be given effect and the attorney shall not be found to have violated the Rule unless and until the Bar proves clearly and convincingly the elements of the wrong charged. With that in mind we must determine if the Bar proved, with clear and convincing evidence, that Rogers violated each of the Rules under which he was charged.

1. Rule 8.4(a)
¶ 23. Rule 8.4 (a), provides that it is professional misconduct for an attorney to "violate or attempt to violate the rules of professional conduct ..." Attorneys in Mississippi have a professional obligation to obey the Rules of Professional Conduct of the State. Miss. R. Discipline Grounds for Discipline. Guidance as to how an attorney is to go about meeting this obligation can be found in scope of the Miss. R. Prof. Conduct, which states that
[s]ome of the Rules are imperatives, cast in the terms "shall" or "shall not." These define proper conduct for purposes of professional discipline. Others, generally cast in the term "may," are permissive and define areas under the Rules in which the lawyer has professional discretion. No disciplinary action should be taken when the lawyer chooses not to act or acts within the bounds of such discretion.
¶ 24. Although Rule 8.4 does not contain the "shall not" language, it is prohibitory nonetheless. Rule 8.4 indicates that certain actions constitute professional misconduct regardless of the fact that they do not lend themselves to greater specificity. Rule 8.4(a), in particular, prohibits the violation or the attempted violation of any of the Miss. R. Prof. Conduct. It is clear that Rogers would violate Rule 8.4(a) by failing to carry out those actions which the Rules under which he was charged denote as "shalls" or by undertaking to do those things which the Rules designate as "shall not's" or constituting professional misconduct. Therefore, upon finding that Rogers violated or attempted to violate Rules 8.4(c) or (d), as charged, it must also be found that he violated 8.4(a).

2. Rule 8.4(c)
¶ 25. Rogers was charged with violating Rule 8.4(c), which provides that it is professional misconduct for an attorney to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." This Court has defined dishonesty "as a `breach of honesty or trust, as lying, deceiving, cheating, stealing, or defrauding ...'" Townsend v. State, 605 So.2d 767, 771 (Miss.1992) (Pittman, J., dissenting) (quoting State v. Page, 449 So.2d 813, 816 (Fla. 1984)). Fraud "involves breach of duty, trust, or confidence, it includes all acts, omissions, or concealments by which another is injured, or an undue or unconscientious advantage is taken." Cumbest v. State, 456 So.2d 209, 217 (Miss.1984) (quoting Smith v. State, 107 Miss. 486, 496, 65 So. 564, 567 (1914)).. Deceit is "[a] fraudulent and deceptive misrepresentation, artifice, or device, used by one ... to deceive and trick another, who is ignorant of the true facts, to the prejudice and damage of the party imposed upon." Black's Law Dictionary 405 (6th ed.1990). And a misrepresentation is a "false statement of a substantive fact material to proper understanding of the matter in hand, made with intent to deceive or mislead." Id. at 1001.
¶ 26. The Complaint herein alleged that Rogers violated Rule 8.4(c) by converting *1167 funds which belonged to the law firm. This Court has held that:
It is well settled that the acts alleged to constitute a conversion must be positive and tortious.
To make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand.... "Action of tort * * * cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself, or to deprive the rightful owner of it, or destroyed the property." ... [I]n order to maintain an action for conversion, there must have been, on the part of the defendant, some unlawful assumption of dominion over the personal property involved, in defiance or exclusion of the plaintiff's rights, or else a withholding of the possession under a claim of right or title inconsistent with that of plaintiff....
PACCAR Fin. Corp. v. Howard, 615 So.2d 583 (Miss.1993) (quoting Mississippi Motor Fin., Inc. v. Thomas, 246 Miss. 14, 20, 149 So.2d 20, 23 (1963)). From the evidence presented below it can be determined that there are three theories by which the Bar is claiming that GHN & W was entitled to the funds: (1) the work was done during regular office hours; (2) Rogers was contractually bound to remit all fees for legal services to the firm; and (3) Rogers' actions constituted a breach of his fiduciary duty to the other members of the firm.
¶ 27. In the proceedings below the Bar attempted to prove that the majority of the work was done during regular business hours. However, the only evidence that the Bar presented to support this contention was that the checks were all disbursed during the week as opposed to on the weekends. Rogers testified that while the checks were disbursed during the week, the title work was done in the evening or on weekends. There were also two witnesses, other than Rogers, who testified to him working nights and weekends. The evidence presented by the Bar does not amount to clear and convincing proof that Rogers did the work during regular business hours.
¶ 28. The Complaint Tribunal found that Rogers's actions amounted to an amendment to the firm's written contract (i.e. the letter of intent). This Court has held that
[t]he most basic principle of contract law is that contracts must be interpreted by objective, not subjective standards. A court must effect a determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties.
Burkhalter & Co. v. Wissner, 602 So.2d 835, 837 (Miss.1992) (quoting Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419 (Miss.1987)). In The Florida Bar v. Cox, 655 So.2d 1122 (Fla.1995) an attorney was suspended for thirty days for moonlighting by accepting "cases without the knowledge or consent of the firm, violating the firm's policy against unauthorized outside legal employment." However, in the case at bar, the letter of intent did not contain a provision prohibiting its employees from engaging in extra-firm activities involving the rendering of legal services and retaining the fees generated therefrom. Nor did the firm have a known policy providing that all fees earned from the rendering of legal services belonged to the firm or that extra-firm activities required prior approval. Therefore, the Complaint Tribunal erred in finding that Rogers' actions were prohibited under the firm's contract.
¶ 29. The Bar also claimed that Rogers breached a fiduciary duty owed to the firm. The Bar referred to the firm as a partnership, claiming that Rogers had breached a fiduciary duty to the other "partners" in the firm. However, the firm was in actuality incorporated as a professional association. Rogers's fiduciary *1168 duties would instead result from his position as an officer and a director of the firm.
¶ 30. As a director and an officer, Rogers had a "duty to exercise the utmost good faith and Loyalty" to the firm. Ellzey v. Fyr-Pruf, Inc., 376 So.2d 1328, 1332 (Miss.1979). See also Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 677 N.E.2d 159, 179 (Mass. 1997). This includes the duty to refrain from engaging in self-dealing activities. This Court has held that where it is alleged that a corporate fiduciary has engaged in self-dealing, by taking advantage of an opportunity belonging to the firm, the firm must first show that (1) under a totality of the circumstances the "business opportunity was logically related to the corporation's existing or prospective activities" and (2) the corporation was financially able to take advantage of the business opportunity by showing that the corporation was solvent at the time. Hill v. Southeastern Floor Covering Co., Inc., 596 So.2d 874, 877 (Miss.1992). After such a showing by the corporation a prima facie case of business opportunity is established and the burden shifts to the director or officer to show that the fiduciary duty has been discharged. Id. at 877-78.
¶ 31. Some of the factors to be considered in determining whether a business opportunity is logically related to the corporation's existing or prospective activities are:
the relationship of the opportunity to the corporation's business purposes and current activities, whether essential, necessary, or merely desirable to its reasonable needs and aspirations; whether or not the opportunity embraces areas adaptable to the corporation's business and into which it might easily, naturally, or logically expand; the competitive nature of the opportunity, whether or not prospectively harmful or unfair; whether or not the opportunity includes activities as to which the corporation has fundamental knowledge, practical experience, facilities, equipment, personnel, and the ability to pursue; and whether or not the acquisition by the director or officer would defeat plans and purposes of the corporation in carrying on or developing the legitimate business for which it was created. 19 C.J.S. Corporation § 513(d) (1990); Ellzey v. Fyr-Pruf, Inc., 376 So.2d at 1333, quoting Miller v. Miller, 301 Minn. 207, 222 N.W.2d 71, 81 (1974).
Hill, 596 So.2d at 878. In this case the business purpose of the firm was to provide legal services, which included loan closings and title searches. Not only did Rogers do loan closings and title searches for clients on behalf of GHN & W, but there were other attorneys in the firm who could have done the work. Therefore, the title work which Rogers was doing after hours was logically related to the existing activities of GHN & W.
¶ 32. There was some discussion as to the financial feasibility of the firm doing the work that Rogers took on after hours. Mr. Rogers testified that he only did the work which the firm would not do because it was considered less than profitable. This testimony was uncontradicted by the Bar. The fact that the firm would not have done the work for less than $350.00 does not help Rogers's cause. This Court in Ellzey recognized that
"[i]t is difficult to imagine how directors may enter into an `independent business,' at least as owners and managers of the business, after acceptance of their membership on the board and during their service as directors, in competition with their corporation without acting in bad faith." This is one reason why it has been held that even rejection of an opportunity by the corporation will not necessarily protect a competing officer or director.
Ellzey, 376 So.2d at 1334 (citations omitted). It is a matter of simple economics to recognize that attorneys who choose to charge higher prices for their services lose *1169 potential clients to the attorney who offers the same services for less; all else being equal a client would rather pay less than more. In that respect, Rogers was in direct competition with GHN & W. Therefore, there was a prima facie showing that the moonlighting done by Rogers was a business opportunity belonging to GHN & W.
¶ 33. Upon the prima facie showing that the business opportunity belonged to the firm, the burden shifted to Rogers to prove that he discharged his fiduciary duty to the corporation and that the competition did not cause economic detriment to the corporation. Ellzey, 376 So.2d at 1335. The fiduciary must establish that the self-dealing actions were ratified by a disinterested board "upon full and continuing disclosure of material facts, inherent fairness, or other circumstances tending to show discharge by the fiduciary of his duty to the corporation." Ellzey, 376 So.2d at 1332. In this case, after clients paid GHN & W for the services rendered by Rogers, Rogers caused the firm to disburse a check, payable to either himself or NBC, for the amount of the attorney's fees applicable to the transaction. Rogers admits that he did not fully disclose his activities to the firm, except to the extent that remitting the title insurance commission checks operated as disclosure. Nor did he seek ratification of his actions from a disinterested Board. Even though he may have begun his moonlighting activities with the consent of Mr. Ward, when the two firms merged he was dealing with a new firm, with a new Board, and he should have gotten its approval. Therefore, there was clear and convincing evidence that Rogers converted funds belonging to GHN & W.
¶ 34. Not only did the conversion of the firm's funds constitute dishonesty and fraud as defined supra in Townsend, 605 So.2d at 771 and Cumbest, 456 So.2d at 217, there is also clear and convincing evidence by which to find that Rogers committed additional acts of dishonesty, deceit, fraud and/or misrepresentation. The comment to Rule 8.4 states that "[m]any kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return." The record indicates that Rogers' moonlighting transactions were funneled through GHN & W. Clients would forward the funds to GHN & W and upon receipt, Rogers would disburse the funds. He would retain the attorney's fee and remit the insurance commissions to GHN & W. The closing documents denoted that the attorney's fees were being paid to GHN & W, not to Rogers individually. As pointed out below, the closing documents were misleading, not only to the clients, but also to the Internal Revenue Service. Mr. Rogers admits that he made no effort to correct this misinformation.
¶ 35. It was also brought out below that most of the checks issued to Rogers were made out to NBC and that some of the stubs to the checks did not show the same payee as was on the check. When Rogers was questioned as to why the checks were made out to NBC instead of to him, he responded that "I paid all the checks that's the way I deposit money in the bank was NBC." When he was questioned as to why the stubs did not correspond to the payees on the checks, Rogers replied that, "It was just the way I wrote them down." "[I]t was not any scientific method of doing it."
¶ 36. The Complaint Tribunal also noted that Rogers failed to report his moonlighting income on his income tax returns. However, there is no showing in the record that Rogers was notified that the charge of an 8.4 violation resulted from his failure to include the moonlighting revenue in his annual income tax returns. "These are adversary proceedings of a quasi-criminal nature. The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the *1170 accused. He can then be given no opportunity to expunge the earlier statements and start afresh." In re Ruffalo, 390 U.S. 544, 551, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (citations omitted), cited with approval in A Mississippi Attorney v. Mississippi State Bar, 471 So.2d 1230, 1233 (Miss.1985). The evidence of Rogers' failure to report the income to the Internal Revenue Service came out during the hearing through questions presented to Rogers by the Tribunal, not the Bar. Discipline can not be imposed on Rogers as a result of his failure to include the income on his tax returns. Nevertheless, other evidence presented clearly and convincingly proved that Rogers violated Rule 8.4(c).

3. Rule 8.4(d)
¶ 37. Rogers was also charge with violating Rule 8.4(d), which provides that it is professional misconduct for an attorney to "engage in conduct prejudicial to the administration of justice." The Supreme Court has held that conduct prejudicial to the administration of justice is synonymous with "`conduct unbecoming a member of the bar' [or] conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts." In re Snyder, 472 U.S. 634, 645, 105 S.Ct. 2874, 86 L.Ed.2d 504(1985). For the most part this rule has been applied to those situations where an attorney's conduct has a prejudicial effect on a judicial proceeding or a matter directly related to a judicial proceeding. Model Rules of Professional Conduct Rule 8.4 (1996).
¶ 38. Oregon Courts have held that an attorney's conduct is prejudicial to the administration of justice if the following three part test is met:
1. The attorney engaged in conduct which amounted to the performance of or the failure to perform some act;
2. The conduct occurred in the context of a judicial proceeding or a matter directly related thereto and related to either the procedural functioning of the proceeding or the substantive interest of a party in the proceeding; and
3. The conduct was prejudicial in nature in that it caused or had the potential to cause harm or injury.
In re Smith, 316 Or. 55, 848 P.2d 612, 613-14 (Or.1993) (citing In re Haws, 310 Or. 741, 801 P.2d 818 (Or.1990)). Similarly, the Fifth Circuit, in holding that 8.4(d) was neither overly broad or vague, found that the Rule's application was consistent with the "State's primary concern ... the obligation of lawyers in their quasi-official capacity `as assistants to the court.'" Howell v. State Bar of Texas, 843 F.2d 205, 207 (5th Cir.1988). The Rule was applied in the context of preventing conduct which is detrimental to "`the trial of cases in the court and their judicial determination and disposition by orderly procedure, under rules of law and putting of the judgment into effect.'" Id.
¶ 39. Mississippi's application of the rule is consistent with that adopted in Howell. The comment to Rule 8.4 states that "a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice." In adopting the Miss. R. Prof. Conduct this Court rejected the broader application of the "moral turpitude" standard, which would have included those offenses involving personal morality which do not reflect on an attorney's fitness to practice law, such as adultery. Miss. R. Prof. Conduct 8 cmt. Furthermore, our case law further indicates that conduct which is prejudicial to the administration of justice is that conduct which is connected to judicial proceedings. See Mississippi Bar v. Land, 653 So.2d 899 (Miss.1994) (attorney for defendant insurance company concealed evidence from plaintiff); Mississippi Bar v. Mathis, 620 So.2d 1213, 1219-20 (Miss.1993) (attorney concealed fact that autopsy had been performed); Mississippi Bar v. Alexander, 697 So.2d 1164 (Miss.1997) (attorney failed to represent *1171 clients zealously, failed to communicate with clients and failed to cooperate with disciplinary investigation); Mississippi Bar v. Robb, 684 So.2d 615 (Miss.1996) (failing to reveal existence of a contempt order and misleading opposing counsel in order to have client's ex-husband arrested); Goodsell v. Mississippi Bar, 667 So.2d 7 (Miss.1996) (attorney intentionally mislead the court regarding a signature on a forged document).
¶ 40. In this case Rogers's actions were not related to a judicial proceeding or a matter connected to a judicial proceeding. The transactions at issue involved title work in connection with loan closings. And the basis for the Complaint was that Rogers converted the fees resulting from these transactions. These were not acts prejudicial to the administration of justice under Rule 8.4(d), as applied in Mississippi.
¶ 41. Although Rogers' failed to include the proceeds from the transactions in his income tax returns indicating a lack of fitness to practice law, as stated in the comment to Rule 8.4, Rogers was not charged with that particular violation. Therefore, this Court finds that the evidence presented below did not prove clearly and convincingly that Rogers violated Rule 8.4(d).

d.
¶ 42. This Court has held that the primary purposes behind the rules of discipline are "`to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar conduct.'" The Mississippi Bar v. Felton, 699 So.2d 949, 951 (Miss.1997) (quoting Mississippi State Bar Ass'n v. A Mississippi Attorney, 489 So.2d 1081, 1084 (Miss.1986)). In determining what sanctions to impose in order to best achieve these purposes our case law sets out the following criteria for consideration:
1. the nature of the misconduct involved;
2. the need to deter similar misconduct;
3. the preservation of the dignity and reputation of the profession;
4. the protection of the public;
5. the sanctions imposed in similar cases;
6. the duty violated;
7. the lawyer's mental state;
8. the actual or potential injury resulting from the misconduct; and
9. the existence of aggravating or mitigating factors.
Felton, 699 So.2d at 951 (quoting Mississippi Bar v. Alexander, 669 So.2d 40, 42 (Miss.1996)).
¶ 43. The Bar has charged Rogers with conduct which indicates that he is unfit to practice law. The preceding discussion indicates that Rogers violated Miss. R. Prof. Conduct Rule 8.4, by engaging in conduct which was dishonest, deceitful, fraudulent or misrepresentative. This Court has previously stated that it "`will not hesitate to impose substantial sanctions upon an attorney for any act which evinces a want of personal honesty and integrity or renders such attorney unworthy of public confidence.'" Mississippi Bar v. Alexander, 697 So.2d 1164, 1170 (Miss.1997) (quoting Foote v. Mississippi State Bar Ass'n, 517 So.2d 561, 564 (Miss. 1987)). Rogers converted funds belonging to GHN & W by breaching his fiduciary duty to the firm by competing with the firm for title work, without disclosure and prior approval, and then funneling the funds generated by the title work to himself through the corporation. He also used misleading closing documents which reflected that the attorney's fees were being paid to GHN & W as opposed to being paid to him individually. Rogers further capitalized on these misleading documents by willfully failing to include the income from the moonlighting transactions in his annual income tax returns. These facts indicate a lack of personal honesty and integrity.
*1172 ¶ 44. There is a strong need to deter attorneys from acting in any manner which indicates a lack of integrity. There is also a strong need to preserve the dignity and reputation of the profession. The Preamble to the Rules of Professional Conduct points out that where members of the Bar neglect the responsibilities of self-governance, by being less than diligent in weeding out abuses within the profession, both the independence of the profession and the public interest which it serves are jeopardized. The above conduct affects not only Rogers's reputation, but brings the entire profession under scrutiny.
¶ 45. One of our duties, as a self-governing profession, is to protect the public interest. The overall purposes of attorney discipline are to protect the reputation of the Bar, to punish the attorney, and to deter future misconduct. Mississippi Bar v. Strauss, 601 So.2d 840, 845 (Miss.1992).
¶ 46. In imposing an indefinite suspension on Rogers, the Tribunal relied on this Court's holding in Tucker v. Mississippi State Bar, 577 So.2d 844 (Miss.1991). In Mississippi Bar v. Pels, 708 So.2d 1372 (Miss.1998), this Court indicated that disbarment is generally warranted in cases involving misappropriations. See also Mathes v. Mississippi Bar, 637 So.2d 840, 847 (Miss.1994) (Misappropriation of clients funds usually results in disbarment). However, an attorney brought up on charges of professional misconduct may offer evidence of mitigating factors which may "diminish his culpability and therefore diminish the necessity for, or severity of, sanctions to be imposed by this Court." Strauss, 601 So.2d at 844. There are several mitigating factors to be considered.
¶ 47. First, Rogers felt that he was entitled to the funds. Courts in other jurisdictions dealing with similar issues have indicated that the fact that an attorney has a good faith argument of entitlement to the funds may serve as a mitigating factor. See In re Lempesis, 293 S.C. 510, 362 S.E.2d 10,11 (S.C.1987) (attorney made no claim that he was entitled to fees deposited in personal account); Plummer v. Kentucky Bar Ass'n, 954 S.W.2d 320 (Ky. 1997); In re Disciplinary Proceedings Against LeRose, 182 Wis.2d 595, 514 N.W.2d 412 (Wis.1994) (attorney disciplined for conversion of fees where the court rejected the attorney's claim that deceased partner authorized retention of the fees); Committee on Legal Ethics Of West Virginia State Bar v. Hess, 186 W.Va. 514, 413 S.E.2d 169, 172 (W.Va. 1991) (attorney converted funds belonging to firm where there was no dispute as to entitlement).
¶ 48. Rogers began his moonlighting activities at least three years prior to the merger, with the consent of his then partner Mr. Ward. He worked nights and weekends to get the work done. Mr. Ward testified that he never talked to Rogers about his moonlighting activities, except to tell Rogers that he, Ward, would not object to Rogers doing work on his own time and keeping the proceeds. Once the merger took place Rogers continued what he had done with the approval of Mr. Ward for a number of years prior to the merger.
¶ 49. Secondly, although we can not excuse Rogers' failure to discharge his fiduciary duty to the new firm, by obtaining approval upon full and continued disclosure, there is no evidence that Rogers took affirmative measures to conceal his activities from his employers. Rogers prepared files for the transactions. He also sent title insurance checks to the firm's Columbus office, some of which included attorneys fees and some of which did not. We find that the foregoing mitigating circumstances warrant the imposition of the sanction of suspension against Rogers, as opposed to disbarment.
¶ 50. However, the length of Rogers's suspension must be determined in light of the aggravating circumstances contained herein.
"The ultimate sanction imposed will depend on the presence of any aggravating *1173 or mitigating factors in that particular situation ..." ABA Standards for Imposing Lawyer Sanctions, Introduction (1986). Among the list of aggravating factors is included: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (g) refusal to acknowledge wrongful nature of conduct; and (i) substantial experience in the practice of law.... ABA Standard 9.22.
Stegall v. The Mississippi Bar, 618 So.2d 1291, 1295 (Miss.1993). In the present action Rogers used closing documents indicating that the attorneys fees were being paid to GHN & W as opposed to Rogers individually. Rogers's explanation as to why the payees on the checks did not coincide with the payees on the stubs to the checks and his explanation as to why the majority of the checks were made out to NBC as opposed to him, do not overcome the clear implication of an intent to make it appear as if the income did not belong to him. In accord with this implication Rogers also willfully failed to include the moonlighting income in his annual income statements to the Internal Revenue Service. And even though the Bar failed to charge that Rogers' failure to report the fees was a violation of the Rules, and as a result no discipline can be imposed for that violation, it can still be considered in weighing the gravity of other misconduct. Mississippi State Bar Ass'n v. Moyo, 525 So.2d 1289, 1298 (Miss. 1988). Thus, this Court finds that the primary purposes of the bar, would best be served by suspending Rogers from the practice of law for a period of 180 days.

III.
¶ 51. For the above and foregoing reasons Rogers is suspended from the practice of law for a period of 180 days from the date of this Judgment. Accordingly, the Judgment of the Complaint Tribunal is affirmed in part and reversed and rendered in part.
¶ 52. JUDGMENT AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. H. RUSSELL ROGERS IS SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF 180 DAYS FROM THE DATE OF THIS JUDGMENT.
SULLIVAN AND PITTMAN, P.JJ., JAMES L. ROBERTS, Jr., SMITH AND WALLER, JJ., CONCUR.
PRATHER, C.J., McRAE AND MILLS, JJ., NOT PARTICIPATING.